[No. 12894. In Bank. — July 22, 1889.]

# F. M. WEST, RESPONDENT, *v.* B. C. CRAWFORD ET AL., APPELLANTS.

CORPORATION — AGREEEMENT FOR ORGANIZATION — SUBSCRIPTION TO STOCK — EXPRESS PROMISE. — An agreement to form a corporation for certain specified purposes, and to pay twenty per cent of the par value of the shares of stock subscribed by the contracting parties within five days after the articles of incorporation shall have been filed in the county clerk's office, to a person therein designated as agent, who is to pay the same to other designated agents of the corporation to be formed for the purchase of real property therefor, is valid, and binds each subscriber upon his express promise to pay the sum specified to the agent named, regardless of the refusal of such subscriber to participate in the final organization of the company, and regardless of the limits of the power of the corporation to levy assessments upon the stock, or of the responsibility of the designated agent to apply the money as agreed and expected, or of the refusal of the other designated agents to act in the receipt and application of the money.

ID.— VALIDITY OF CONTRACT — PUBLIC POLICY — CONSIDERATION — MUTUAL PROMISE — TRUST. — Such agreement is not void as illegal or contrary to public policy, though providing for a payment in excess of the statutory power of assessment of the corporation; the express agreement to pay having no reference whatever to an assessment being made by the company. The mutual promise of the subscribers is a sufficient consideration for the promise of each, and is valid and binding. Nor is the contract void as creating an express trust in real property forbidden by the Civil Code, whatever question in that regard may arise when the time comes for the investment of the money subscribed.

ID. — MEMBERSHIP IN CORPORATION. — An agreement to subscribe to the stock of a corporation to be thereafter formed does not make the subscriber a member of the corporation; but such membership is immaterial where there is an express promise to pay a certain percentage of the par value of the stock to a designated agent, after the incorporation shall have been formed.

ID. — TERMS OF CONTRACT TO INCORPORATE — MATURITY OF SUBSCRIPTION PAYABLE TO AGENT. — A contract to pay for stock in a corporation to be formed, after its incorporation, to a designated agent, need not specify the acts necessary to be done to incorporate, or show where the principal place of business of the corporation is to be. The liability is fixed by the fact that the company is legally incorporated, and does not depend upon whether the whole stock is subscribed for, the contract being not to pay to the corporation, but to a third party, if such condition is not expressed in the agreement.

ID. — ACTION UPON SUBSCRIPTION — PARTIES — TRUSTEE OF EXPRESS TRUST. — The designated agent to whom such subscription is payable may sue therefor in his own name as the trustee of an express trust, and other

agents of the corporation to be formed, who are to receive the money from him and dispose of it in the purchase of property for the corporation, should not be joined as parties plaintiff. The agent to whom the subscription is payable is the trustee of the subscribers to collect the same, and is not the trustee of the corporation in any sense.

ID. — EVIDENCE. — In an action by such agent, it is not admissible to prove that one of the trustees to make purchase of water rights for the corporation was the owner of certain water rights and interested therein, there being nothing in the agreement as to the purchase of any particular water right.

ID. — INCORPORATION OF WATER COMPANY. — A water company need not be incorporated as provided by the statutes of 1872; but it is sufficient if it is organized as provided by the Civil Code, which applies to all corporations.

APPEAL — POINTS NOT URGED IN BRIEF. — It is not the duty of this court to search the record for errors not specifically pointed out or discussed in the brief of appellant.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. L. Dudley, E. S. Pillsbury*, and *Gordon Blanding*, for Appellants.

Corporate funds cannot be collected from share-holders except by assessments duly levied by the directors. (*California Sugar Mfg. Co.* v. *Shafer*, 57 Cal. 396, 398; *Santa Cruz R. R. Co.* v. *Spreckels*, 65 Cal. 194; Civ. Code, secs. 305, 308, 309, 331; *Gaswiler* v. *Willis*, 33 Cal. 20; 91 Am. Dec. 607; *Morrison* v. *Gold Mt. G. M. Co.*, 52 Cal. 303; *Hawkins* v. *Mansfield G. M. Co.*, 52 Cal. 513; *Strasburg R. R. Co.* v. *Echternacht*, 21 Pa. St. 220; 60 Am. Dec. 49; *Mt. Sterling C. Co.* v. *Little*, 14 Bush, 429; *Stowe* v. *Flagg*, 72 Ill. 397.) The contract is void as against public policy. (Civ. Code, sec. 1667; *Troy & B. R. R. Co.* v. *Tibbits*, 18 Barb. 306, 307; *Plank Road Co.* v. *Griffin*, 24 N. Y. 155; *Dorris* v. *Sweeney*, 64 Barb. 640; *Dutchess & C. R. R. Co.* v. *Mabbett*, 58 N. Y. 400; *Erie and N. Y. C. R. R. Co.* v. *Owen*, 32 Barb. 616; *Sedalia, W. & S. R'y Co.* v. *Wilkinson*, 83 Mo. 243; *Knowlton* v. *Spring Co.*, 14

Blatchf. 364; *Spring Co.* v. *Knowlton*, 103 U. S. 49.) The preliminary agreement is silent as to the essential elements of incorporation. (Civ. Code, secs. 290, 296; *Dutchess & C. R. R. Co.* v. *Mabbett*, 58 N. Y. 397; *Harris* v. *McGregor*, 29 Cal. 124.). The complaint states no cause of action, because not averring an acceptance of the trust by the three trustees, and there is no evidence to prove such acceptance; but the evidence proves their repudiation of the trust. A water company cannot be incorporated under the code, but only under the water companies' act. (Stats. 1869–70, 660; Stats. 1871–72, 526; Pol. Code, secs. 4478, 4479; *Hooker* v. *Greene*, 50 Wis. 271.) The preliminary memorandum was not binding until all the capital stock had been subscribed for. (*Steamboat Co.* v. *Sewall*, 78 Me. 167; *Oldtown & L. R. R. Co.* v. *Veazie*, 39 Me. 571; *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 423; *Stoneham Branch R. R. Co.* v. *Gould*, 2 Gray, 277; Redfield on Railways, *80; *Hughes* v. *Antietam Mfg. Co.*, 34 Md. 318, 331, 332; *Santa Cruz R. R. Co.* v. *Schwartz*, 53 Cal. 106; *Bray* v. *Farwell*, 81 N. Y. 600.) Defendants should have been permitted to show that Shippee, one of the trustees, promoted the corporation to sell his own property. (*Davis* v. *Rock Creek L. F. & M. Co.*, 55 Cal. 364, 365; 36 Am. Rep. 40; *Andrews* v. *Pratt*, 44 Cal. 317, 318; *San Diego* v. *S. D. & L. A. R. R. Co.*, 44 Cal. 111–117; *Wilber* v. *Lynde*, 49 Cal. 290; *Wright* v. *Oroville M. Co.*, 40 Cal. 27; *Farmers' and Merchants' Bank of Los Angeles* v. *Downey*, 53 Cal. 467; 31 Am. Rep. 62; *Shattuck* v. *Oakland S. & R. R. Co.*, 58 Cal. 550; *Oakland Bank of Savings* v. *Wilcox*, 60 Cal. 126, 141; *O'Connor* v. *Flynn*, 57 Cal. 293; *Wiard* v. *Brown*, 59 Cal. 194; *Gower* v. *Andrew*, 59 Cal. 123, 124; 43 Am. Rep. 242; *Tracy* v. *Colby*, 55 Cal. 67; *Bank of Woodland* v. *Hiatt*, 58 Cal. 234; *Fishback* v. *Miller*, 15 Nev. 428.) The contract is void because creating an express trust in relation to real property not authorized by law. (Civ. Code, secs. 847, 857; *Estate of Hinckley*, 58 Cal. 477, 488.)

*J. C. Campbell, Joseph H. Budd, S. D. Woods, Edward
I. Jones,* and *E. W. McKinstry,* for Respondent.

By subscribing the agreement, the subscribers did not
become stockholders. (*Monterey & S. V. R. R. Co.* v. *Hil-
dreth,* 53 Cal. 123.)   Their liability upon the contract to
pay the money subscribed did not depend upon their be-
coming stockholders. (*Homes* v. *Dana,* 12 Mass. 190; *War-
ren* ·v. *Stearns,* 19 Pick. 73; *Robertson* v. *March,* 3 Scam.
198; *Barnes* v. *Perrine,* 9 Barb. 202; *Couch* v. *Ingersoll,* 2
Pick. 292; *Kane* v. *Hood,* 13 Pick. 281; *Babcock* v. *Wilson,*
17 Me. 372; 35 Am. Dec. 263; 2 Parsons on Contracts, 6th
ed., 499; *Hazelton* v. *Buck Mountain,* 57 Pa. St. 313.)   The
action must be brought by the person to whom the money
was to be paid. (*Christian College* v. *Hendley,* 49 Cal.
347.)   The mutual promise was a sufficient consideration.
(1 Parsons on Contracts, sec. 19, note 1; *Fisher* v. *Ellis,*
3 Pick. 323; *Williams College* v. *Danforth,* 12 Pick. 541;
*Thompson* v. *Page,* 1 Met. 565; *Ladies' College* v. *French,* 16
Gray, 196; *Amherst Academy* v. *Cowls,* 6 Pick. 427; 17 Am.
Dec. 389; *Stewart* v. *Hamilton,* 2 Denio, 403; *Fray* v. *God-
dard,* 7 N. H. 435; *State Treasurer* v. *Cross,* 9 Vt. 298; 31
Am. Dec. 626; *Christian College* v. *Hendley,* 49 Cal. 347.)
The contract was legal, and the clause in regard to the
agency of three persons to purchase property for the cor-
poration, if illegal, was independent, and did not affect
the other legal portions of the contract. (Bishop on Con-
tracts, sec. 487; 1 Parsons on Contracts, 458; *Kerrison* v.
*Cole,* 8 East, 236; *Leavitt* v. *Palmer,* 3 N. Y. 37; 51 Am.
Dec. 333; *Bank of Australasia* v. *Bank of Australia,* 6
E. F. Moore, 152; *Chase's Ex'r* v. *Burkholder,* 18 Pa. St.
50.)   Those who sign and file the articles, and bring the
corporation into existence, act for the real subscribers.
(*Monterey & S. V. R. R. Co.* v. *Hildreth,* 53 Cal. 129.)
The action is properly brought by plaintiff. (*Thompson*
v. *Page,* 1 Met. 565; *Ives* v. *Sterling,* 6 Met. 310; approved
*Athol M. H. Co.* v. *Carey,* 116 Mass. 473.)   An agreement
to form a corporation, and as to shares of stock to be

had therein, is valid. (*Chater* v. *S. F. S. R. R. Co.*, 19 Cal. 220.) Fraud by one or more promoters of the corporation is no defense to this action. (*Dorris* v. *French*, 4 Hun, 292, 296.)

Works, J.—Action on the following contract:—

"We, the undersigned, hereby agree with each other, and the one with the other, that a corporation shall be formed by us, under the name of San Joaquin Land and Water Company, for the purpose of procuring water rights on one or more of the rivers or streams running through the counties of Calaveras, Tuolumne, Stanislaus, and San Joaquin, in this state; purchase, erect, and construct dams, reservoirs, canals, aqueducts, and other water-ways in and by which the water so procured from said rivers, or any of the same, can be utilized for general purposes; to secure and impound springs, streams, and other water in any of said counties, and lead the water so secured to any of such canals or water-ways to supply farmers, miners, cities, towns, and villages with any of the said waters for mining, farming, drinking, irrigation, and other purposes; to negotiate for, buy, sell, let, improve, and cultivate lands and town lots in said state; lay out town lots and colony tracts, and sell and let such town lots and colony tracts; that the capital stock of said corporation shall be one million dollars, divided into ten thousand shares of one hundred dollars per share; and we hereby agree with each other, and one with the other, that we will take the number of shares of the capital stock of said corporation which appears opposite our respective names hereunto subscribed, and will pay twenty per cent of the par value of the said shares so subscribed by us respectively, in five (5) days after the articles of said incorporation shall have been filed in the office of the county clerk of said county of San Joaquin, and will pay the same to F. M. West at the Stockton Savings and Loan Society Bank, at Stockton,

California; we hereby constitute said F. M. West as the agent to collect the amount which becomes due as aforesaid.

"We further nominate, constitute, and appoint L. U. Shippee, J. L. Beecher, and George Gray as our agents, and the agents of the corporation so to be formed, to negotiate for the purchase of any one or more water rights, canals, reservoirs, aqueducts, or water-ways for said corporation, and draw from said West any or all moneys that may have been paid to him by us respectively, by virtue hereof, and use said money for paying the same; and any and all contracts which our said agents may make in said matter shall be binding upon said corporation, and also upon us. Our said agents are further authorized to employ engineers and other assistants, and have them survey routes for such canals, and examine proper locations for dams, and do such other service as may be, in their opinion, for our best interest, and the interest of said corporation, to accomplish the object or purpose for which the same is to be formed.

"Dated November 19, 1887."

The complaint alleges the execution of the contract by various persons, including the appellants, and the facts showing that the company named in the agreement was incorporated and organized in all things as agreed upon therein; that at a meeting of the board of directors of the corporation it was ordered by the board that twenty per cent of the subscribed stock be called in, in accordance with the agreement signed by the stockholders, and "that F. M. West be notified to notify the parties and collect the same"; that the plaintiff demanded of the defendants twenty per cent of the amount subscribed by them, amounting to two thousand dollars, which they refused and neglected to pay.

There was a general demurrer to the complaint, which was overruled, and the defendants answered, admitting that they signed the instrument sued on, but denying

that they "thereby, or at all, entered into an agreement with any of the persons whose names are attached to said agreement, or with any persons whomsoever, and allege that the signing and agreement by them was wholly without any consideration or benefit to these defendants from the plaintiff or any other persons whomsoever," and denying all of the other material allegations of the complaint. They also answered, specially, that they did not participate in the organization of the company, and that they and others who signed the agreement repudiated the same, and notified the corporation that they would not pay the same, and that certain parties named, including the plaintiff, had procured the signing and filing of articles of incorporation of the company for the purpose of defrauding the defendants, and without their knowledge or consent, and that certain persons who were named as agents of the company to negotiate for the purchase of water rights, and draw on the plaintiff for the money to pay for the same, had since repudiated the contract and refused to act as such agents, and that they had so refused to act because of certain false representations by one Shippee, made before the agreement was signed, that certain water rights could be purchased, and their value, upon which representation the parties relied, and were thereby induced to subscribe to said agreement; and that said water rights were of little or no value, and said false representations were made for the fraudulent purpose of procuring said subscriptions; that said Shippee was interested in the sale of said water rights, which was unknown to said subscribers at the time, and that upon hearing said facts they had repudiated the contract, and so notified the corporation.

The court found that the defendants "made and entered into a certain mutual agreement in writing, with other persons, whose names are subscribed to the agreement in the finding set forth," being the one set

out above; the incorporation of the company in conformity with the agreement; election of directors by the stockholders, and their organization by the election of officers; the making of the order calling in twenty per cent of the stock; the payment of the same by a large number of the subscribers; the demand upon and refusal to pay by the defendants; and the delivery by defendants and a number of the other subscribers to the secretary of the corporation of the following notice:—

"Please take notice that we and each of us hereby withdraw, revoke, retract, rescind, and repudiate a certain paper or instrument in writing, dated November 19, 1887, signed by us and purporting to be an agreement for the formation of a corporation under the name of San Joaquin Land and Water Company, and for the payment of certain money to F. M. West; the appointment of L. U. Shippee, J. L. Beecher, and George Gray as agents of said corporation and other purposes; and each and every part of said instrument.

"STOCKTON, CAL., February 24, 1888."

That the subscribers had no notice of said revocation until after a large amount of their subscriptions had been paid, and that they did not accept said notice, or agree to the terms of the same in any manner; and found against the defendants as to their allegations of fraud, and their repudiation of the contract on that ground; and found in terms that "neither said defendants nor their associates, nor any of them, were induced to sign the said agreement by any false or fraudulent representations made by said Shippee, as set forth in the answer, or otherwise"; but that they signed the agreement "for the purposes mentioned therein, and with the intent of carrying out the objects of said agreement as mentioned, and for no other purpose."

Judgment was rendered in favor of the plaintiff for two thousand dollars and interest. A motion for a new trial was denied, and the defendants appeal.

Counsel for appellants have favored us with a long and able brief on the question of corporate powers and duties, involving grave questions of constitutional and statutory construction. But as this action does not in any way present any such questions, this discussion has tended to confuse the real question at issue, and hinder rather than aid us in arriving at a conclusion. The action is not brought by a corporation, nor is this an attempt to enforce an assessment made by a corporation. The contract sued on is twofold: it amounts to a subscription to the stock of a corporation, to be thereafter organized; and in addition, it is an express promise to pay *to the plaintiff in this action* twenty per cent of the amount of such subscription. The simple question, then, is, whether or not this promise to pay the plaintiff can be enforced. The subsequent incorporation of the company named in the contract was a matter of no consequence, except that it fixed the time when the money should become due and payable, the agreement being to pay five days after the articles of incorporation should be filed. The subsequent action of the board of directors ordering the collection of twenty per cent of the money subscribed was wholly unimportant. If this action is maintainable at all, it is not by reason of any such action on the part of the corporation, but by virtue of the mutual promise of these parties to pay to the plaintiff the amount of money named.

Counsel insist that the corporation when organized had no power to levy an assessment exceeding ten per cent at any one time, and that to require the payment of a greater sum of the original subscribers to the stock would have been a discrimination against such stockholders, and therefore invalid as against public policy. This may be conceded, but it does not meet the case. Here is a positive agreement on the part of the parties who subscribed to this stock to pay a fixed and certain sum of money at a certain time to a certain party. It

is clear from the contract itself that it was not the intention that the liability to pay the sum of money named should in any way depend upon an assessment being made by the corporation after its organization. This is quite clear from the fact that the payment is fixed so soon after the organization of the company that such an assessment and its enforcement would have been impossible. Therefore, the parties must be understood to have bound themselves to pay the sum of money agreed upon without any reference whatever to an assessment being made by the company.

Again, it is urged that Mr. West, after the collection of the money, might appropriate the same to his own use, and the defendants not get the benefit of the payment made by them as a payment upon the stock subscribed for. But this, again, it seems to us, is beside the question. If they saw proper to contract to pay the money to West, it was at their own risk. If the money should not be applied as they evidently expected, it would not, in our judgment, in any way affect their liability to pay according to their contract.

So the question as to whether these parties, or any of them, subsequently acted with the corporation is a matter entirely immaterial in this case, and the same may be said with reference to the question whether the parties named as trustees to receive from West the money paid in, and use the same for certain purposes, acted or refused to act in that capacity. They were not the trustees to collect the money from the contractors, but to receive it from West after it was paid in and apply it as agreed upon. Therefore, whether they subsequently received, or were willing to receive, the money and act as trustees was wholly immaterial.

It is true, as contended by counsel for the appellants, that the mere signing of this agreement to subscribe to the stock of the corporation did not make the defendants members of such corporation. To do so, the statute

must have been complied with by the signing of the articles of incorporation, or otherwise complying with its provisions. (*Troy and Boston Railroad Co.* v. *Tibbits*, 18 Barb. 297; *Erie and New York City Railroad Co.* v. *Owen*, 32 Barb. 616; *Dorris* v. *Sweeney*, 64 Barb. 639.)

But it seems to us that the question whether they thereby became members of the corporation or not is immaterial to this controversy. The right to recover here, as we have said, depends wholly upon their express promise to pay the money to the plaintiff in this action, and if the suit cannot be maintained on that ground, it is quite clear to us that the judgment of the court below is erroneous.

It is further contended by the appellants that this action cannot be maintained for the reason that the contract itself is illegal and against public policy; and authorities are cited to show that a contract made in violation of the statute, or otherwise against public policy, cannot be enforced. But we are unable to see anything in this contract that contravenes any statute, or that can be said to be in any way against public policy.

The further point is made that the contract itself does not provide or set out all of the acts necessary to be done in order to incorporate the proposed company, and particularly that it does not appear from the contract sued upon where the principal place of business of the corporation should be; but this, again, it seems to us, is immaterial. The contract simply makes it necessary, in general terms, that the company shall be incorporated, because the money does not become due until such incorporation takes place; but the findings show that the articles of incorporation contain all that the statute requires, and that the company was, in fact, legally incorporated. This, it seems to us, is all that it was necessary to show on this branch of the case; and it was not necessary that these facts should be set out in the contract agreeing to pay the money to the plaintiff.

The points made by the appellants, that the complaint is insufficient, and that the cause of action was not made out by the evidence, because of the fact that the parties named as agents to purchase water rights and expend the money agreed to be paid therefor are not made parties plaintiff, cannot be maintained, for the simple reason that these agents had nothing to do with the collection of the money from the subscribers to the agreement, nor was there any obligation to pay to them. They were made agents for the purpose of purchasing water rights and expending the money after the same had been paid to or collected by West. Therefore, they were not interested in the action now being prosecuted, and would not have been proper parties.

The same may be said with reference to other objections made by the appellants, based upon the fact that these trustees failed to act as such. We regard all of these matters as being entirely immaterial to the question before us.

So the objection made that the court erred in refusing to permit the defendants to prove the failure of these trustees to act is also unfounded.

It is contended that the company was not incorporated as provided by the statutes of 1872, relating to the incorporation of water companies (Stats. 1871–72, p. 733), but it was organized as provided by the Civil Code, which applies to all corporations, and this was sufficient.

The contention that the incorporation was illegal because the purposes of its incorporation, as named in the articles, were too numerous, and "not susceptible of union," is equally groundless.

It is insisted that the agreement sued upon was not binding until all of the capital stock had been subscribed for, but we see nothing in the agreement indicating such an intention on the part of the signers, nor does any reason occur to us for so holding. There are

authorities to the effect that a party agreeing to subscribe to a certain number of shares of a corporation to be organized cannot be held liable to pay assessments on his subscription until the whole of the stock is taken. (*Steamboat Co.* v. *Seawell*, 78 Me. 167; *Oldtown and Lincoln R. R. Co.* v. *Veazie*, 39 Me. 571; *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 423; *Stoneham Branch R. R. Co.* v. *Gould*, 2 Gray, 277; *Hughes* v. *Antietam Mfg. Co.*, 34 Md. 316.)

But the contract under consideration bears evidence of a different intention on the part of its signers. They contract to pay a sum of money to a third party, and not to the corporation. We must presume that they contracted with knowledge of the fact that a valid incorporation of the company mentioned might take place under our code without the whole of the stock being subscribed. Therefore, it cannot be presumed that their promise to pay was on condition that the whole of the stock should be taken. If this was their intention, it should have been expressed in the agreement.

The parties mutually agreed with each other, that is, with those who signed the contract, to pay a certain sum of money to the plaintiff. He was thereby made a trustee of an express trust, and authorized to collect the money agreed to be paid. (Code Civ. Proc., sec. 369; *Winters* v. *Rush*, 34 Cal. 136; *Considerant* v. *Brisbane*, 22 N. Y. 389.)

The parties by their mutual agreement made the plaintiff *their* trustee to collect and receive the money to be paid. He was not in any sense the trustee of the corporation. There is nothing to indicate that the money was ever to go to the corporation. On the contrary, the contract shows on its face that it was not. When collected by the plaintiff it was to go into the hands of the other trustees, to be used by *them* in the purchase of water rights. How these water rights were to be transferred to the corporation, if at all, is not stated, but this

omission cannot affect the liability of the parties to pay their debt.   Their mutual promise, one to the other, was a sufficient consideration for the promise of each, and the contract was valid and binding. _ (*Twin Creek and Turnpike Co.* v. *Lancaster*, 79 Ky. 552; *Christian College* v. *Hendley*, 49 Cal. 347; *George* v. *Harris*, 4 N. H. 533; 17 Am. Dec. 446; *Amherst Academy* v. *Cowls*, 6 Pick. 427; 17 Am. Dec. 386; *Funk* v. *Hough*, 29 Ill. 145.)

The appellants offered to prove by the witness Shippee that he was the owner of certain water rights mentioned in the agreement sued on, and interested therein, but the evidence was excluded.   This is complained of as having been "peculiarly erroneous."   We see no error in this ruling.   There was no mention in the agreement of any particular water right that should be purchased. This was left entirely to the trustees to determine. There was nothing in the agreement binding its signers to buy any water right belonging to Mr. Shippee or any one else.   Therefore, the evidence was not only immaterial, but the question objected to should not have been allowed, for the reason that it assumed a fact that did not exist, viz., that certain water rights were "mentioned in the exhibit and specified as rights to be purchased."

Certain minutes purporting to be minutes of the stockholders of the company were admitted in evidence on behalf of the plaintiff, and this is alleged as error. Counsel have pointed out many reasons why the court erred in admitting these minutes, the principal of which are that the proper notices of the meetings were not given, and the meetings were not held at the office of the company.   We think these minutes were improperly admitted, not on the ground stated, but for the reason that they were wholly immaterial.   Their admission, however, is no ground for reversing the case, for the reason that no injury could have resulted to the appellants on account of this evidence.   As we have said before, the

action of the corporation with regard to these matters was entirely immaterial. The incorporation of the company was proved by other evidence, showing a compliance with the provisions of the code, and this was all that was necessary.

Finally, the appellant makes the point that the agreement sued upon was against public policy and void, for the reason that it attempted and purported to create an express trust in relation to real property. But this contention has no foundation, for the simple reason that there was nothing in the contract creating any such trust, or in any way relating to real estate, so far as the question here presented is concerned. When the time comes for the investment of the money, some such question may arise, but it is not presented here.

After favoring us with 116 pages of brief, counsel close the same by saying: "Many grave errors in regard to rulings on evidence, to the form and substance of the findings, and to the overruling of appellants' motion for a nonsuit appear in the transcript. The points of error are so numerous that it would unduly extend this brief to repeat them in detail. They are believed to be sound, and are confidently relied upon by appellant, and this honorable court is respectfully referred to the grounds of appellants' motion for nonsuit, elaborately stated at pages 95 to 100 of the transcript, and to the specification of errors at pages 109 to 162 thereof."

We do not feel it our duty, after the full investigation we have given to the points raised and discussed in the case, to search the record for errors, however grave they may appear to counsel, where not specifically pointed out to us.

Judgment and order affirmed.

McFARLAND, J., SHARPSTEIN, J., THORNTON, J., and BEATTY, C. J., concurred.

Rehearing denied.