[No. 14197.   In Bank.—July 19, 1893.]

CHARLES KOHLER, ASSIGNEE, ETC., RESPONDENT, v.
A. E. R. AGASSIZ ET AL., APPELLANTS.

| 99 | 9 |
| 120 | 411 |

| 99 | 9 |
| 131 | 50 |

| 99 | 9 |
| 133 | 67 |

| 99 | 9 |
| 137 | 419 |

| 99 | 9 |
| 142 | 138 |
| 142 | 141 |

| 99 | 9 |
| d145 | 706 |

ATTACHMENT—ACTION BY ASSIGNEE OF INSOLVENT CORPORATION AGAINST NON-RESI-
DENT STOCKHOLDERS—SUBSCRIPTIONS TO CAPITAL STOCK—ACCOUNTING.—An
action by the assignee of an insolvent corporation organized under the laws of
this state to recover from the stockholders the balance due from them severally
upon their subscriptions to its capital stock, is an action upon contract, and an
attachment will lie against non-resident stockholders who are sued as defend-
ants therein ; and it is immaterial that the complaint does not show the amount
due upon each subscription and that the prayer of the complaint is for an ac-
counting, where the affidavit for attachment shows the amount due.

ID.—AFFIDAVIT—SECURITY—EVIDENCE OF CONTRACT—COMPLAINT.—An affidavit
for attachment against a non-resident of the state need not state that the pay-
ment of the claim is not secured by mortgage lien or pledge, or that the claim
is upon a contract.   That the action is upon a contract, express or implied, need
only appear from the complaint in the action.

ID.—PROPRIETY OF ATTACHMENT—REGULARITY.—An attachment is properly issued
when issued in a case provided for by section 537 of the Code of Civil Procedure,
and it is regularly issued when the requirements of sections 538 and 539 are
complied with.

ID.—ATTACHMENT AGAINST NON-RESIDENTS—SUFFICIENCY OF COMPLAINT.—Upon a
motion to dissolve an attachment against non-resident defendants, it cannot be
inquired whether the complaint is ambiguous, unintelligible, or uncertain, but
only whether it shows that the action is upon contract, express or implied, and
states a cause of action, or whether it appears therefrom that it can be so
amended as to state a cause of action upon contract.

ID.—MOTION TO DISSOLVE ATTACHMENT—DEFECTIVE COMPLAINT—PRAYER OF
COMPLAINT.—A motion to dissolve an attachment cannot reach defects in
the complaint, and no objections can be urged thereupon to the prayer of the
complaint.

ID.—SUBSCRIPTION TO STOCK OF CORPORATION—ASSESSMENTS.—A stockholder of
a corporation is liable to pay his subscription to stock according to its terms,
and where the defendants have agreed to pay for every share of stock in such
installments and at such times as they may under the laws of the state be law-
fully called upon by the corporation to pay, and the complaint by an assignee
of an insolvent mining corporation shows that the full amounts of the sub-
scriptions are necessary to pay the indebtedness of the corporation, the full
amounts may be called for at once, and it is not a necessary condition of recovery
in such action nor of an attachable cause of action that the directors of the
corporation should first have levied assessments upon the stock under the code,
nor that a decree for such assessment should first be made.

ID.—ADJUDICATION—INSOLVENCY OF CORPORATION.—The court cannot assume,
upon a motion to discharge an attachment against non-resident subscribers to
the stock of an insolvent corporation, at suit of its assignee in insolvency, that
the corporation may turn out not to be insolvent, its insolvency having been
adjudicated by the judgment of a competent court.

ID.—RIGHTS OF ASSIGNEE.—An assignee of an insolvent corporation succeeds to
all the rights of the corporation to enforce subscriptions to its stock.

APPEAL from an order of the Superior Court of the City
and County of San Francisco, refusing to dissolve an attachment.

The facts are stated in the opinion of the court.

*Edward J. Pringle,* for Appellants.

The cause of action is not an attachable cause of action. In order to support any attachment there must be an indebtedness, whose amount is ascertainable as existing at the commencement of the action. (*Bullard* v. *Kinney,* 10 Cal. 60; *Wheeler* v. *Farmer,* 38 Cal. 210; *Ackroyd* v. *Ackroyd,* 11 Abb. Pr. 345; *Johnson* v. *Short,* 2 La. An. 277; *Ketchum* v. *Ketchum,* 1 Abb. Pr. N. S. 157; *Ebner* v. *Bradford,* 3 Abb. Pr. N. S. 248, 249; 1 Wade on Attachments and Garnishments, sec. 18; Code Civ. Proc., sec. 538.) No debt is due from the stockholders until a call is made. (Civ. Code, secs. 331, 332; *Banet* v. *Alton etc. R. R. Co.,* 13 Ill. 504; *Grosse Isle Hotel Co.* v. *I'Anson,* 43 N. J. L. 447; *Braddock* v. *Philadelphia etc. R. R. Co.,* 45 N. J. L. 364; *Mann* v. *Pentz,* 3 N. Y. 417; *Seymour* v. *Sturgess,* 26 N. Y. 134; *Alabama etc. R. R. Co.* v. *Rowley,* 9 Fla. 515; *Granite Roofing Co.* v. *Michael,* 54 Md. 65; Wait on Insolvent Corporations, sec. 615; *Parks* v. *Heman,* 7 Mo. App. 14; *McKelvey* v. *Crockett,* 18 Nev. 238; *Bingham* v. *Rushing,* 5 Ala. 403; *Teague* v. *Le Grand,* 85 Ala. 495; 7 Am. St. Rep. 64; *Brown* v. *Union Ins. Co.,* 3 La. An. 177; Spelling on Private Corporations, sec. 417, and cases cited *post.*) In case of the insolvency of the corporation, the powers of the board of directors cease, and do not pass to any other body or person; and no call can be made except by the decree of a court of equity, and hence, in such case, no debt is due from the stockholders until the entry of such decree. (*Glenn* v. *Saxton,* 68 Cal. 353; *California Sugar Manuf. Co.* v. *Schafer,* 57 Cal. 396; *Harmon* v. *Page,* 62 Cal. 448; *Glenn* v. *Semple,* 80 Ala. 159; 60 Am. Rep. 92; *Chandler* v. *Siddle,* 3 Dill. 479; *Chandler* v. *Keith,* 42 Iowa, 99; *Lane's Appeal,* 105 Pa. St. 67; 51 Am. Rep. 166; *Bell's Appeal,* 115 Pa. St. 90; 2 Am. St. Rep. 532; *Scovil* v. *Thayer,* 105 U. S. 155; *Glenn* v. *Marbury,* 145 U. S. 499; *Glenn* v. *Williams,* 60 Md. 93, 122, 123. See also generally *Hecksher* v. *Trotter,* 48 N. J. L. 419; *Thorington* v. *Merrick,* 101 N. Y. 8; *Hawes* v. *Clement,* 64 Wis. 155; *Harvey* v. *Foster,* 64 Cal. 297; *Avery* v. *Zander,* 77 Tex. 207.)

*Pillsbury & Blanding*, and *Robert Y. Hayne*, for Respondent.

The attachment was properly issued, as the action was an action upon a contract. (Code Civ. Proc., sec. 537, subd. 2; *California S. H. Co.* v. *Callender*, 94 Cal. 127; ·28 Am. St. Rep. 99; *Marysville etc. Co.* v. *Johnson*, 93 Cal. 549; 27 Am. St. Rep. 215.) It was not necessary that the contract should of itself show the amount due. (*Dunn* v. *Mackey*, 80 Cal. 107; *Donnelly* v. *Strueven*, 63 Cal. 182.) An assessment is not a necessary preliminary to an action upon a contract of subscription to the stock of a corporation. (*California S. H. Co.* v. *Callender*, 94 Cal. 127; 28 Am. St. Rep. 99; *Marysville etc. Co.* v. *Johnson*, 93 Cal. 538; 27 Am. St. Rep. 215; *West* v. *Crawford*, 80 Cal. 19.)

PATERSON, J. — This is an appeal from an order of the superior court refusing to dissolve an attachment.

The action is brought by the assignee of an insolvent corporation, organized under the laws of the state of California, against Agassiz, Shaw, and a number of others, to recover the balance due from them severally upon their subscriptions to the capital stock of the company.

The point made by appellants (Agassiz and Shaw) is, "that the cause of action is not an attachable cause of action."

So much of the affidavit of the plaintiff upon which the writ of attachment issued as is essential here is as follows: —

"Defendants, A. E. Agassiz and Quincy A. Shaw, in the said action are indebted to him in the sum of thirty-five thousand dollars, lawful money of the United States, over and above all legal set-offs and counter-claims, upon an express contract, for the direct payment of money, to wit, a subscription by said defendants to the capital stock of said California Land and Timber Company, which said subscription has been duly assigned in the matter of said corporation in insolvency to plaintiff, and that such contract was made and is payable in this state, and that the payment of the same has not been secured by any mortgage or lien upon real or personal property, or any pledge upon personal property.

"That both said defendants reside in the state of Massachusetts, and neither of them reside in the state of California.

"That the said attachment is not sought, and the said action is not prosecuted, to hinder, delay or defraud any creditor or creditors of the said defendant."

The statements of the affidavit are more ample than they are required to be by statute in support of an attachment against a non-resident of the state.

The several subdivisions of section 537 of the Code of Civil Procedure provide that the plaintiff may have the property of the defendant attached "in an action upon a contract, expressed or implied, against a defendant not residing in this state." In the case of resident defendants, the right to the writ is given only in cases of contract made or payable in this state, and other limitations are prescribed which are not applicable in the case of non-resident defendants. There is also a marked difference in the requirement of the statute as to the affidavit. In the case of non-residents, it is required to show only "that the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all legal set-offs or counter-claims) and that the defendant is a non-resident of the state; and 3, that the attachment is not sought and the action is not prosecuted, to hinder, delay, or defraud any creditor of the defendant." As against a non-resident defendant, the affidavit need not show that the payment of the claim is not secured by mortgage lien or pledge, or that it is upon a contract made or payable in this state, or upon a contract for the direct payment of money, or even upon a contract at all.

The right to an attachment is given by the statute quoted (Code Civ. Proc., sec. 537, subd. 2), "in an action upon a *contract, express or implied*"; hence it can properly issue only in such an action, but that fact is not required to be shown by the affidavit. The right to an attachment, and the mode of procedure for obtaining it, are the creatures of statute, depending for their existence and regularity upon the terms of the code.

The attachment laws of the several states differ in so many particulars, that without the utmost caution in comparing their provisions with our own, we are in constant danger of being led astray, or unduly influenced by de-

cisions apparently in point, but in reality resting upon a different basis. Even our own adjudicated cases, many of them growing out of questions applicable to resident debtors, have no proper application to the different *status* occupied by non-residents.

An attachment may be said to have been properly issued when issued in a case provided for by section 537 of the Code of Civil Procedure. It is regularly issued when the requirements of sections 538 and 539 are complied with.

The code provides that a writ of attachment may be discharged by giving a bond on behalf of the defendant. It also gives him the right to apply to the court or judge for a discharge of the writ, upon the ground that the same was *improperly or irregularly* issued. The irregularities which will warrant the discharge of the writ will usually appear upon 'the face of the affidavit or undertaking, or where properly but prematurely issued, by a comparison with the summons and complaint. Where, however, the attachment has *improperly issued*, that is to say, in a case not provided for by the statute, the evidence must usually be sought *de hors* the papers upon which it is evidently founded.

We do not understand that the appellants here base their contention on any alleged irregularities in the mode of procuring the attachment, but rather that it was *improperly issued* — that it issued in a case not provided for by law. For evidence in support of this contention we are referred to the complaint on file.

The complaint shows that the California Land and Timber Company is, and since 1885 has been, a corporation organized under the laws of the state of California, for the purpose of carrying on a general lumber business, etc., having a capital stock of one million dollars, divided into ten thousand shares of the par value of one hundred dollars each; that defendants Agassiz and Shaw jointly subscribed for five hundred shares of said capital stock, and then and thereby agreed and promised to receive the same from the corporation, and to pay therefor the par value thereof, to wit, one hundred dollars for each and every share thereof, "in such installments and at such times as said defendants might under and according to the laws of the said

state of California be lawfully called upon and required by
said corporation to pay the same, and then and there did pay
said corporation the sum of fifteen thousand dollars on account
of and in part payment of said five hundred shares"; that de-
fendants still own and hold the stock, and that no part of the
sum agreed by them to be paid has been so paid except fifteen
thousand dollars as aforesaid, and that thirty-five thousand
dollars is due and owing and unpaid by defendants; that in
November, 1887, the corporation became and was duly ad-
judged an insolvent, and plaintiff duly appointed the assignee
of the company and duly qualified as such.     The prop-
erty of the corporation is encumbered by mortgages, judg-
ments, attachment liens, etc., in excess of its value, and owes
two hundred and ninety-five thousand dollars of unsecured
debts in addition.  Some of the defendants are insolvent, and,
as plaintiff believes, the full amount of the subscriptions of
the defendants will be insufficient to pay the debts of the
corporation.

The prayer is that an account may be had of the debts
and liabilities of the corporation, and that it be decreed
that the whole amount of the subscriptions is necessary to
pay the debts and liabilities of the corporation, and that plaint-
iff have judgment against the defendants for the sum owing
by them and for such other and further relief as may be
proper, etc.

It will be observed that the action is not brought to recover
an assessment *eo nomine,* levied by the corporation upon the
stock of the company, but counts upon a contract by which
they agree to pay for their stock in such installments and at
such times as said defendants might under the laws of Cali-
fornia be lawfully called upon and required by said corporation
to pay the same.

Under the laws of California a stockholder may be lawfully
called upon and required to pay assessments upon his stock to
the extent of ten per cent of the par value thereof, except where
the whole capital is not paid up, in which case he may be re-
quired, if the liabilities of the company demand it, to pay by
way of assessment the full amount unpaid upon the capital stock.
(Civ. Code, sec. 332.)

A stockholder may expressly agree to pay the amount of his subscription immediately, or at stated times, and thus relieve the corporation of the duty of making calls. He will be liable to pay upon such contract according to its terms. (*Phœnix W. H. Co.* v. *Badger*, 67 N. Y. 296–300; Spelling on Corporations, sec. 555.)

It is matter of common knowledge that in this state corporations, and especially mining corporations, are in the habit of setting aside for sale at some established price a portion of their capital stock for the purpose of raising what is termed working capital, or a fund to be devoted to the development of their property. Assessments must be uniform, and under our law must be levied upon all the capital stock. By this method of selling a portion of their stock, companies may make such contracts with purchasers as to price, time, and manner of payment, etc., as may be agreed upon, and for non-payment of the agreed price for stock in such cases an action at law may be maintained. So an agreement to take stock in a corporation to be organized presently may be enforced by the corporation after its organization. (*Marysville etc. Co.* v. *Johnson*, 93 Cal. 538; 27 Am. St. Rep. 215; *West* v. *Crawford*, 80 Cal. 19.)

The allegations of the complaint in reference to payment for the shares "in such installments and at such times as said defendants might under the laws of the state of California be lawfully called upon and required by said corporation to pay the same," is simply a limitation as to the amount which defendants could be called upon to pay at a single payment, and as to the time at which such payments might lawfully be demanded, and did not prescribe the *manner* of its collection.

We are not called to turn this inquiry into a demurrer to the complaint upon the ground that it is ambiguous, unintelligible, or uncertain, but simply to determine whether: 1. The complaint showed the action to be founded upon contract, express or implied. 2. Whether it states facts sufficient to constitute a cause of action against the defendants; and if not, 3. Does it appear therefrom that it can be so amended as to state a cause of action upon contract. As against a

non-resident debtor, these questions being answered in the affirmative, we must not concern ourselves further with the complaint.

We are of opinion that the complaint is sufficient in these respects, and that the affidavit is ample to warrant the writ. The affidavit for the attachment shows the specific amount claimed to be due. It is unnecessary that the *complaint* should show this amount — there is no such requirement in the statute; nor is it necessary that the contract itself should show the amount due. (*Dunn* v. *Mackey*, 80 Cal. 107.) A statement in the complaint, therefore, as to the specific amount claimed to be due would not aid the attachment. Such a statement in the complaint would be of no greater weight than the statement in the affidavit. It would be as much a matter of opinion or conclusion in the one case as in the other. The complaint does show that the action is upon contract, and not in tort. It shows that the defendants received the stock for which they promised to pay. This being the case, it is immaterial that the prayer of the complaint is for an accounting. Even on demurrer to the complaint the defendants cannot object to the prayer, and certainly, so long as the complaint contains every essential of an action upon contract, they cannot upon motion for an attachment accomplish what they could not upon demurrer; a motion to dissolve the attachment cannot reach defects in the complaint.

But it is claimed that there can be no attachable cause of action until after a decree in chancery, or an assessment by the board of directors — that an assessment is a necessary element of an attachable cause of action upon a subscription like the one in the case at bar. We do not think the terms of the agreement warrant this contention. The defendants agreed to pay one hundred dollars for each and every share of stock, in such installments and at such times as they might under the laws of this state be lawfully called upon by the corporation to pay. This provision does not say anything about the *manner* in which the corporation should call upon them — it simply provides for the times and amounts of payments. It is provided in the code that, where it is necessary to pay the debts, the full amounts of the subscriptions may be called for, and the complaint here shows that this condition exists; that the whole amount is

necessary.   In *California S. H. Co.* v. *Callender,* 94 Cal. 120; 28 Am. St. Rep. 99, the contract was to pay "at such times and in such manner as may be determined by the board of directors of said corporation to be hereafter chosen." The court held that it was not necessary to a recovery on the contract of subscription that the directors of the corporation should have levied assessments upon the stock in the mode prescribed by the Civil Code.   *Glenn* v. *Saxton,* 68 Cal. 353, cited by appellant, was an action to recover an assessment.

The court cannot assume that the corporation may turn out not to be insolvent; that question has been conclusively adjudicated by the judgment of a competent court.   Furthermore, it is expressly alleged that more than all the solvent subscriptions will be needed to enable the assignee to pay the debts and liabilities of the corporation.

Under the laws of this state we think there can be no serious question as to the right of the assignee who succeeds to all the rights of the insolvent to enforce them as fully as the insolvent could have done before the insolvency.   If there had been no insolvency the corporation could have maintained the suit, if we are right in the views above expressed, without levying an assessment.   (Insolvent Act, secs. 17, 18, 21.)

The order appealed from is affirmed.

McFARLAND, J., GAROUTTE, J., DE HAVEN, J., and HARRISON, J., concurred.

Rehearing denied.

BEATTY, C. J., dissented from the order denying a rehearing.