[No. 2.    First Appellate District.—June 19, 1905.]

PEOPLE'S HOME SAVINGS BANK, Respondent, v. H. J. SADLER, Appellant; MINNIE C. SADLER et al., Executors, Substituted Appellants.

APPEAL—REVIEW CONFINED TO RECORD—RELATION OF DATE OF AFFIRMANCE.—In determining the correctness of a judgment appealed from, this court is limited to a consideration of the record thereof, and error of the trial court cannot be predicated by reason of any matter subsequent to its rendition.    If the judgment is affirmed, it is as of the date of its rendition.

ID.—DEATH OF APPELLANT—SUBSTITUTION OF EXECUTORS—IMPROPER MOTION TO REMAND CAUSE.—Where the appellant has died pending the appeal, a motion by his substituted executors to remand the cause to the superior court upon the ground that the judgment is incapable of enforcement for want of presentation of it as a claim against the estate of the deceased appellant is improper and will be denied.

ID.—ENFORCEMENT OF JUDGMENT—PROVINCE OF COURT—PROBATE JURISDICTION.—The enforcement of the judgment or the right to withhold it is primarily within the jurisdiction of the court in which it was rendered.    Upon the death of the appellant the power of the court to enforce the judgment by execution against him terminated, and the respondent is remitted for its collection to the probate jurisdiction having charge of appellant's estate, and to that court the executors must present any defense they may have to its payment from the assets of that estate.

Bank—Transfer of Shares—Assumption of Liability by Transferee.—Upon the transfer of shares of stock in a bank and the acceptance of certificates issued therefor, the transferee assumes the liability to the bank for the unpaid amount thereof to which the original owners were subject.

Id.—By-Laws—General Power of Bank—Inherent Right—Restrictions—Enumeration of Powers not Exclusive.—A bank as a private corporation has a general power and inherent right incidental to its creation to enact by-laws for its internal government and to regulate the conduct, rights, and duties of its members, independently of legislative declaration, and subject only to legislative restrictions. The enumeration of powers to make by-laws contained in section 303 of the Civil Code does not restrict such general power and inherent right.

Id.—By-Law for Action upon Calls—Contract—Waiver of Assessment.—A by-law providing for the enforcement of unpaid calls is within the general power of the bank, and a provision for enforcement thereof by action binds all consenting stockholders; and where all of the stockholders agreed to the by-laws by signature thereto, such contract is a waiver of the right to insist that the corporation shall levy assessments therefor, as provided in the Civil Code, and may be enforced by the bank according to its terms.

Id.—Consideration of Contract by Transferee.—The admission of a transferee of stock to the privileges of a member of the corporation, with the right to participate in its proceedings and to receive dividends upon his shares of stock, is a sufficient consideration for the agreement with the corporation by signature to its by-laws.

Id.—Provision for Lien upon Stock—Foreclosure not Required.—A provision in the by-laws giving the bank a lien upon the stock for unpaid calls does not create a mortgage requiring foreclosure under section 726 of the Code of Civil Procedure; and the bank may enforce the payment of the indebtedness by action without any foreclosure of the lien.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Fred H. Hood, C. S. Farquar, and Barnes & Hood, for Appellant.

Stratton & Kaufman, for Respondent.

HARRISON, P. J.—The plaintiff is a corporation organized under the laws of this state, and the appellant is a stock-

holder therein holding forty shares of its capital stock of the par value of one hundred dollars, on each of which there has been paid to the plaintiff the sum of thirty-three and one-third dollars and no more.    The present action was brought to recover from him the sum of sixty-six and two-thirds dollars remaining unpaid upon each of said shares. Judgment was rendered in favor of the plaintiff for $2,666.67 and interest, from which the defendant has appealed, bringing the appeal here upon the judgment-roll, including a bill of exceptions.

The articles of incorporation of the plaintiff, in which five directors were named, were signed and acknowledged May 11, 1888, setting forth the amount of its capital stock to be three hundred thousand dollars, divided into three thousand shares of the par value of one hundred dollars each, and showing that all of it had been subscribed, and that each of the said directors had subscribed for six hundred shares.    The certificate of incorporation was issued by the secretary of state May 14, 1888.    On May 17, 1888, the aforesaid subscribers for the capital stock, without a meeting having been called for that purpose, assented to in writing, and adopted a code of by-laws for the corporation, and on the same day an entry of that fact was made in the minutes of the directors' meeting.    On May 18th these by-laws, duly certified by a majority of the directors and the secretary of the corporation, were copied into a book kept by the corporation and thereafter known as the "Book of By-Laws."    Following them there was written in the book and signed by the stockholders the following: "We the undersigned stockholders of the People's Home Savings Bank, a corporation, do hereby agree to the provisions contained in the foregoing by-laws and in such amendments to the said by-laws as may hereafter be adopted, and we agree to obey all the provisions contained therein as aforesaid in every respect."    Article IX of these by-laws is as follows: "The board of directors of said corporation shall, at their first meeting, after the adoption of these by-laws, call in thirty-three and one-third per cent of the capital stock thereof, and may issue certificates for such stock under such restrictions as are provided in these by-laws, signed by the secretary and president, or in his absence by the vice-president, and the remaining sixty-six and two-thirds per cent of

said capital stock shall be subject to the call of the board of directors to be made at any time; whenever the remaining sixty-six and two-thirds per cent of said capital stock, or any part thereof, shall be called by the board of directors it shall be immediately paid by the stockholders, and any amount not so paid by any stockholder shall be a debt due to the corporation, and the corporation shall have the right to immediately commence suit therefor in any of the courts of this state, and shall have a lien on the stock owned by any stockholder for the amount so due.'' On May 18, 1888, five certificates for six hundred shares each of said capital stock were issued to the aforesaid subscribers, upon the back of each of which the aforesaid article IX was printed at length and in full, and the said by-law has since been printed on the back of each certificate of stock issued by the plaintiff.

April 3, 1889, the defendant became the owner by transfer from J. K. Wilson, one of the aforesaid subscribers, of ten shares of the said capital stock, and on that day the plaintiff issued to him a certificate for said ten shares, for which he gave and signed the following receipt: ''Received the above certificate subject to the articles of incorporation and by-laws of the corporation,'' and at the same time subscribed his name to the by-laws copied in the aforesaid book. The capital stock of the plaintiff was thereafter increased from three hundred thousand dollars to one million dollars, divided into ten thousand shares of the par value of one hundred dollars each, and certificates issued to the subscribers therefor, and on June 13, 1890, the defendant became the owner by transfer of thirty of said shares, for which certificates were issued to him by the plaintiff, upon the face of each of which was printed the words ''This stock is one-third paid up.'' After receiving these certificates the defendant attended the stockholders' meetings of the plaintiff, and at said meetings voted the said forty shares, and from time to time received dividends thereon, six in all.

In 1894 the plaintiff became insolvent, and on January 20, 1895, went into liquidation under the provisions of section 11 of the Bank Commissioners' Act as amended in 1887 (Stats. 1887, p. 91); and on August 28, 1895, the bank commissioners directed the directors of plaintiff to levy an assessment for the full amount of its unpaid capital stock. In obedience to

this direction the said directors passed a resolution September 30, 1895, calling in the unpaid two thirds of the capital stock, and requiring each stockholder to immediately pay to the corporation at its office the sum of sixty-six and two thirds dollars upon each share of its stock held by such stockholder. Notice of this resolution was published as directed by the board of directors, and a copy thereof, together with a demand in accordance therewith for the full amount due from them respectively, was duly served upon the several stockholders. The defendant not having complied with this demand the plaintiff brought the present action.

1. The judgment against the defendant was entered in the superior court March 21, 1899, and the appeal therefrom was taken May 20, 1899. The appellant died April 14, 1901; and upon proof that the executors of his will had been substituted by the superior court as defendants in his place, an order was made herein continuing the appeal against them. When the appeal came on for hearing counsel therefor objected to any further proceedings upon the ground that the judgment is incapable of enforcement by reason of the failure of the respondent to make proper presentation to the said executors of his claim against the estate of the appellant, and asked to introduce evidence establishing these facts; and also asked that upon such showing the court, without either affirming or reversing the judgment, would make an order remanding the cause to the superior court, with directions to take such course as would be proper in view of these facts.

This motion must be denied. The function of an appellate court is to review the action of the inferior court in rendering the judgment or making the order from which the appeal is taken. For this purpose a record of the proceedings before the inferior court and of the matters presented for its action is brought to the appellate court, and in determining the correctness of the judgment or order appealed from it is limited to a consideration of that record. If the judgment is affirmed such affirmance is as of the date at which it was rendered. If it is reversed the case stands as if no judgment had been rendered by the inferior court. It is therefore manifest that error on the part of the inferior court cannot be predicated by reason of any matter occurring subsequent to its rendition of the judgment, and it is equally evident that it would be irrel-

evant for the appellate court to entertain any evidence of such subsequent matters.

The principle upon which this rule rests is not impaired by the fact that in certain exceptional instances the appellate court, upon a showing of matters occurring subsequent to the entry of the judgment, will decline to entertain the appeal or to consider its merits, as, for example, where the judgment has been satisfied of record by the voluntary act of the appellant (*People* v. *Burns,* 78 Cal. 645, [21 Pac. 540]; *Moore* v. *Morrison,* 130 Cal. 80, [62 Pac. 268]); or where the judgment was rendered upon a cause of action which did not survive, and by reason of the death of the appellant the cause of action has abated pending the appeal (*Estate of Bachelder,* 123 Cal. 466, [56 Pac. 97]); or where the statute by virtue of which the judgment was rendered has been repealed without any saving clause pending the appeal (*First National Bank* v. *Henderson,* 101 Cal. 307, [35 Pac. 899]); or where the inferior court has granted a new trial after the appeal from the judgment was taken, whereby the judgment was vacated (*Id.*); or where the parties to the appeal have entered into a stipulation which has the effect to render the appeal a mere moot question (*Illinois etc. Bank* v. *Pacific Railway Co.,* 115 Cal. 285, [47 Pac. 60]); or where, by reason of such subsequent occurrences, there would be no matter pending for action before the inferior court (*San Diego School Dist.* v. *Board of Supervisors,* 97 Cal. 438, [32 Pac. 517]; *Foster* v. *Smith,* 115 Cal. 611, [47 Pac. 591]). In all these cases the judgment appealed from had become inherently inoperative, and its affirmance or reversal would not affect the rights of the parties, or give to the lower court any function to perform in reference thereto.

The enforcement of a judgment or the right to withhold its enforcement is a matter primarily within the jurisdiction of the court by which it was rendered; and if the judgment appealed from herein should be affirmed, and there should be any reasons why the superior court should not enforce it, they must be presented to that court, and its action thereon can then be reviewed by the appellate tribunal. Upon the death of the defendant the power of that court to enforce its judgment by execution terminated, and the respondent was remitted for its collection to the probate jurisdiction of the court having charge of the administration of his estate, and to

that court the appellant must present any defense there may be to its payment out of the assets of that estate.

2. Under the facts set forth in the record it must be held that by the transfer to the appellant of the forty shares of the capital stock of the plaintiff, and his acceptance of the certificates issued to him therefor, he assumed the same liability to the corporation for the unpaid amount thereof that his assignors were under. (Civ. Code, sec. 1531, subd. 2; *Webster* v. *Upton*, 91 U. S. 65; *Visalia etc. Bank* v. *Hyde*, 110 Cal. 632, [52 Am. St. Rep. 136, 43 Pac. 10] ; *Walter* v. *Merced Academy Assn.*, 126 Cal. 582, [59 Pac. 136].)

It is however contended by him that the plaintiff is not entitled to maintain the present action, for the reason that the above-quoted by-law is invalid, and in support thereof he relies upon the proposition that a corporation has only such power as is given it by the legislature, and that, as in section 303 of the Civil Code, the legislature has enumerated the subjects upon which a corporation may make by-laws, it has impliedly declared that it cannot make a by-law upon any other subject.

A by-law of a private corporation is a rule 'or law adopted by it for its internal government, and to regulate the conduct and prescribe the rights and duties of its members towards itself and among themselves in reference to the management of its affairs. Although the authority to enact such by-laws is frequently declared in the charter of the corporation, or by some general law, yet the authority to enact them does not depend upon such declaration, but is an inherent right which, in the absence of some positive legislative restriction, is incident to every corporation. The legislature may prescribe the formalities to be observed in their enactment, and may limit the scope and subjects for which they may be enacted; but in the absence of any restriction by the legislature, the propriety or character of the by-laws is to be determined by the corporation itself, subject, however, to the condition that they must be reasonable and not contravene or be inconsistent with its charter or any existing law of the state. Accordingly, the legislature of this state, in defining the inherent powers of a corporation in section 354 of the Civil Code, has declared that "Every corporation, as such, has power: . . . 6. To make by-laws, not inconsistent with

any existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock.'' This declaration is general in its terms, and sufficiently comprehensive to include the right to enact the above-quoted by-law. By enumerating in section 303 of the Civil Code certain matters upon which corporations may enact by-laws the legislature has not limited the authority to make such by-laws which they would have as an incident inherent in their creation and irrespective of such legislation. (See *State* v. *Mayor*, 33 N. J. L. 57.) Similar provisions in the statutes of Massachusetts (Rev. Stats., ed. 1836, ch. 44, secs. 1, 2) were held by the supreme court of that state to be ''not restrictive but directory.'' (*Davis* v. *Proprietors*, 8 Met. 321.)

The case of *Child* v. *Hudson Bay Co.*, 2 P. Wms. 207, cited by the appellant, is not inconsistent with this rule. The statement of Lord Macclesfield quoted therefrom, that ''Where the charter gives the company a power to make by-laws they can only make them in such cases as they are enabled to do by the charter,'' is to be construed in connection with the facts in reference to which it was made. The company was empowered to make by-laws for its government, and for the management and direction of its trade to Hudson Bay, and it was held that it could not under this authority make by-laws in relation to insurance and other projects which parliament had declared to be illegal. That portion of the by-law, however, which declared that the company should have a first lien upon the stock of any member who should become indebted to it was declared valid; provided such debt was incurred in reference to the business for which the company was incorporated. (See Angell & Ames on Corporations, secs. 326, 356.) In the other case cited by the appellant (*Ireland* v. *Globe Milling Co.*, 19 R. I. 180, [61 Am. St. Rep. 756, 32 Atl. 921]) the court cited this case as authority for holding that a statute of Maine similar to section 303 of the Civil Code did not authorize the defendant to make the by-law therein involved, but in its opinion upon a subsequent hearing of the same case (21 R. I. 9, [79 Am. St. Rep. 769, 41 Atl. 258]) that court said that it did not question the proposition that a corporation could pass by-laws relative to the regulation of its affairs, although the statute gave no special authority therefor,

but held that the by-law in question was invalid for the reason that it attempted to interfere with private right in matters not pertaining to the business of the corporation.

Article IX aforesaid is moreover not only a by-law for the regulation of the affairs of the corporation, but it is also a contract between the parties signing the same on the one part and the corporation on the other, and may be enforced as such by the corporation.   While provisions for regulating the rights of the members of a corporation as between themselves, duly adopted by a majority of the stockholders, may not be enforceable as a by-law upon non-consenting stockholders, yet, if assented to by all, they may be enforced as a contract. (*New England Trust Co.* v. *Abbott,* 162 Mass. 148 [38 N. E. 432] ; Angell & Ames on Corporations, sec. 342; Clarke & Marshall on Corporations, sec. 642.)   Subscribers for the stock of a corporation may agree among themselves to pay the amount of their subscription either in a single installment or in such sums and at such times as the same may be called for.   Such a contract will be a waiver of their right to insist that the corporation shall levy assessments therefor as provided in the Civil Code, and may be enforced against them by the corporation according to its terms.   (*West* v. *Crawford,* 80 Cal. 19, [21 Pac. 1123; *Marysville Electric Light Co.* v. *Johnson,* 93 Cal. 538, [27 Am. St. Rep. 215, 29 Pac. 126] ; *Kohler* v. *Agassiz,* 99 Cal. 9, [33 Pac. 741].)

Upon the transfer to the appellant from the original subscribers of his forty shares of stock, and the issuance to him by the plaintiff of certificates therefor, on the back of each of which the above by-law was printed, he was informed of the condition upon which he became a stockholder, and of the extent and character of his ability for the unpaid portion of the capital stock.   With full notice of the by-law, he acknowledged in writing that he had received the certificate subject thereto, and by also subscribing his name to the book of by-laws he thereby agreed to the provisions contained in them, and thereafter held the stock on the same conditions and subject to the same obligations as did his assignors.   (*Visalia etc. R. R. Co.* v. *Hyde,* 110 Cal. 632, [52 Am. St. Rep 136, 43 Pac. 10].)   His admission to the privileges of a member of the corporation, with the right to participate in its proceedings and to receive dividends upon his shares of stock, was a suffi-

cient consideration for the agreement thus made by him with the corporation.

3. The appellant further contends that, assuming that he is under this liability to the plaintiff, the present action for a personal judgment against him cannot be maintained, but that under the provisions of section 726 of the Code of Civil Procedure, the only remedy of the plaintiff is for a foreclosure of its lien upon his shares of stock. The limitation upon the form of action which is declared in section 726 extends only to "mortgages," but the provision in the aforesaid by-law giving the corporation a lien upon the shares of a stockholder for the amount of the par value thereof which may be unpaid does not constitute a mortgage. A lien on personal property may exist in many forms other than by way of mortgage, and although every mortgage is a lien, it is not every lien that is a mortgage. The essential element of a mortgage is a transfer or conveyance of the mortgaged property from the mortgagor to the mortgagee; but the stockholder does not by virtue of this by-law transfer or convey any property to the corporation, but merely agrees that the corporation may have a lien upon his interest in its property as collateral security for his indebtedness to it. The corporation may enforce the payment of that indebtedness without any foreclosure of this lien. (*Sonoma Valley Bank* v. *Hill,* 59 Cal. 107.)

The judgment is affirmed.

Cooper, J., and Hall, J., concurred.