26 N.J. Super. 28 (1953)
97 A.2d 180
HENRY E. KATCHER, PLAINTIFF,
v.
EDWARD OHSMAN, HERMAN FRIEDLANDER AND CROWN FUR DYEING & DRESSING CORP., A NEW YORK CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 11, 1953.
*31 Mr. Harry Krieger, attorney for plaintiff.
Mr. Meyer Pesin, attorney for defendants.
STEIN, J.S.C.
Plaintiff seeks a preliminary injunction to restrain the individual defendants Ohsman and Friedlander from conducting a special meeting of directors of the corporate defendant, Crown Fur Dyeing & Dressing Corp., the alleged purpose of which is to oust or remove the plaintiff as an officer and director of the company, and also to grant salaries to the individual defendants and to the exclusion of the plaintiff. The plaintiff and the defendant Ohsman are residents of this State; the defendant Friedlander is a resident of New York. The corporate defendant is a New York corporation, authorized to do business in New Jersey. Jurisdiction over the individual defendants and the corporate defendant was obtained by personal service within this State.
The company was organized in 1933. Its business consists of processing furs and skins. Since 1942 its industrial activities have been conducted wholly within this State, though it maintains a business office in New York City. The plaintiff and the two individual defendants own all the issued and outstanding common stock of the company, 200 shares in all, each owning an equal one-third thereof. Each of said *32 three individuals is an officer and director of the company. The three of them constitute the entire board of directors. Although there is some dispute as to the extent of the time and effort contributed by each individual to the corporate project, it is evident from the proofs that stock ownership and corporate management are vested entirely in the same three persons. Thus the company is the simplest example of a small closed corporation.
The plaintiff claims that when in 1938 he was invited to join the corporate enterprise and to become a stockholder therein, he was unwilling to do so for the reason, communicated by him to the defendants Ohsman and Friedlander, that he did not desire to enter into a business enterprise in which his interest could be adversely affected by the majority vote of the other stockholders. Plaintiff claims, and the defendants deny, that in order to induce him to buy his stock the defendants represented to the plaintiff that the corporate structure of the company was then such that no binding action could be taken either by the stockholders or directors unless 90% in stock interest voted in favor of such action, they making it clear that all affirmative stockholder action would require a minimum vote of 90% of stock interest and that all director action could be taken only by as many directors as together owned at least 90% of the outstanding stock. The plaintiff claims that not only was that the representation but that the individual defendants promised that that would be the required action in the future, and that because of that representation and promise the plaintiff felt assured that he could in no event and under no circumstances be bound by the action of his co-stockholders or his co-directors unless he too concurred in any proposed action. Plaintiff relied on the said representation and assurance, purchased his stock, and was promptly elected a director and the vice-president of the company, which offices he has held for over 14 years. Until recently the plaintiff had no cause or occasion to examine the by-laws of the company because, as he claims and it is not denied in the defendants' affidavits, all actions taken by the stockholders *33 and directors of the company during the last 14 years were always by unanimous approval, and that if at any time during that long period of years any proposed action met with any objection by any single stockholder or director, the proposed action was abandoned.
Since about January of this year dissension has arisen between the plaintiff and the two individual defendants. The cause of the dissension seems to be the plaintiff's acquisition of some stock interest in a New York warehouse. The plaintiff says, and the defendants do not deny, that that warehouse business is in no way competitive with the processing business of the corporate defendant. The root of the trouble seems to be the individual defendants' disappointment at the plaintiff's unwillingness to share with them his warehousing investment. I am not concerned with that quarrel nor with the question whether or not the attention which the plaintiff gives to the warehouse business in any way diverts time required by his duties as part of the management of the defendant company. The defendants do not claim that there is any interference with the plaintiff's performance of such duties as are his as an officer of the defendant company. I gather from the proofs and the arguments that the individual defendants regard the plaintiff's presence and contribution of effort as quite superfluous and that, as the plaintiff swears, they regard their business "family" as already too large because of his membership therein.
Plaintiff says that recently the individual defendants told him that unless he allowed them to participate in his New York investment they would throw him out of the business of the defendant company and see to it that he did not get his money therefrom, and that as a step in the direction of carrying out their threat they sent notices of a directors' meeting to be held on March 16, 1953, which meeting was adjourned to April 17, 1953; that upon receiving notice of the meeting plaintiff for the first time investigated the records of the company and learned that in one by-law it is provided that "at all meetings of the stockholders all questions, the manner of deciding which is not specifically *34 regulated by statute, shall be determined by a 90% vote of the stockholders present in person or by proxy," each stockholder being entitled to one vote for each share of stock owned by him, but that in another by-law it is provided that the directors shall act by a majority, each director to have one vote "irrespective of the number of shares of stock that he may hold," and that in another by-law it is provided that a director may be removed by a vote of stockholders holding a majority of the stock. Plaintiff claims that the presence of the two by-laws last mentioned, in conflict with the 90% by-law, are fraudulently present in the minute book of the company; that the fraud consists of the defendants either permitting those conflicting by-laws to continue despite their representation to the contrary at the time plaintiff bought his stock or that they were fraudulently inserted at some subsequent time. Plaintiff says that when he discovered the presence of the nonconforming by-law provisions he called that fact to the attention of the individual defendants and that their answer was that they could do with the minutes and minute books whatever suited their purpose. I believe that the representation and promise were made to the plaintiff. The presence in the by-laws of the 90% stock vote requirement is strongly corroborative, as is the plaintiff's undenied assertion that for 14 years no action was taken by the three stockholders or directors if any one of them disagreed with the action proposed. It is not necessary to determine whether or not the two conflicting by-laws, calling for less than 90% stock support, were injected after the plaintiff was induced to buy into the company. It is enough that the individual defendants made the representation above mentioned and that such representation had the effect of overcoming the plaintiff's hesitancy and inducing him to buy into the company. For 14 years the defendants permitted the plaintiff to continue under the belief that their representation was true in fact and now, when disharmony arises, they seek to assert a voting power in conflict with that which they represented to exist. That conduct cannot be tolerated unless the defendants' representation and assurance *35 call for something unlawful, which illegality is one of the contentions advanced by the defendants.
I not only find that the representation as claimed by the plaintiff was made by the individual defendants but I am of the further view that implicit in that representation was the promise that if the voting requirements called for by the by-laws in 1938 were not then as represented, the said defendants would put them into the represented condition. The complaint seeks specific performance of that promise, as well as reformation of the non-conforming by-laws. It would seem that if specific performance is warranted, then reformation accomplishes the two-fold objective of implementing the relief of specific performance and also furnishing reparation against what must be regarded in equity as the defendants' fraud.
The defendants contend that it is unlawful for persons to agree that in their corporate enterprise there shall be required of stockholders a vote greater than the majority of the stock or of the directors a vote greater than the majority in number of directors. If this were so, that would be an end to the plaintiff's case, for this court would not attempt to enforce an agreement which contravenes the law. It is unnecessary to consider whether the New York Corporation Act, as it stood in 1938 or as it stands now, is related to this question. The New York law was not proved before me as a fact. I therefore consider the general law on the subject.
Speaking of voting power in a corporation the Supreme Court of Errors of Connecticut in Bator v. United Sausage Co., 138 Conn. 18, 81 A.2d 442 (1951), said:
"Its stockholders may agree to combine their votes. If their purpose is lawful and not against public policy, fraudulent or harmful to creditors, their agreement is binding among themselves. 3 Cook, Corporations (8th ed.) § 622a; 13 Fletcher, Corporations (Perm. ed.) § 5743; 13 Am. Jur. 537, § 501; see note, 71 A.L.R. 1289."
See also Ringling v. Ringling Bros.-Barnum & Bailey Comb. Shows, 49 A.2d 603 (Del. Ch. 1946), affirmed with modification in 53 A.2d 441 (Del. Sup. Ct. 1947); Trefethen v. *36 Amazeen, 93 N.H. 110, 36 A.2d 266 (N.H. Sup. Ct. 1944). See also Franklin Trust Co. v. Rutherford Electric Co., 57 N.J. Eq. 42 (Ch. 1899), affirmed 58 N.J. Eq. 584 (E. & A. 1899). In the last cited case the court recognized the validity of a by-law requiring that five-eighths of a company's stock should be represented at every stockholders' meeting.
Stockholders' agreements as to the exercise of the voting power by themselves as stockholders or by the directors as the business managers are most generally expressed in the form of a by-law. Usually such by-laws provide for a majority in interest vote by the stockholders and for a majority in number vote by the directors. Is a by-law requiring a vote from the stockholders greater in interest than 51% or a vote from directors greater than a majority in number of the directors offensive to public policy, since the greater the voting requirement the greater is the likelihood of an impasse or deadlock? That risk, however, is always present even where the provisions call for a mere majority. Many small corporations are formed by two individuals or two separate groups, each of whom seeks protection against being out-voted by the other. In those instances where the stock is equally divided amongst two persons or two groups, a board of directors of an even number of persons is constituted. Therefore a 51% stock vote requirement of such stockholders or a majority vote of such directors actually presents, as a practical matter, a requirement of unanimity. Such corporate requirements and effects do not offend the law and there therefore seems to be no reason why stockholders may not provide for any minimum vote, either in stock interest amongst the stockholders or in number amongst the directors, even if that minimum translates itself as a practical effect into a requirement of unanimity. In the absence of contrary agreement and provision, the law presumes that stockholders intend to make the rule of the majority controlling, but I know of no valid reason why stockholders are not at liberty to establish for themselves a voting rule or formula which will protect the holder of a single share against the action of all the other shareholders *37 becoming binding or controlling upon him. The defendants' counsel in his brief refers to the case of Nickolopoulos v. Sarantis, 102 N.J. Eq. 585 (E. & A. 1928), and argues that "stockholders are powerless, except by the method provided [by the statute], to alter the voting power of any share of stock." The principle for which that case stands is clearly an established one, but it has no application to the matter before me and the cited case is nohow in point. In the cited case the stockholders agreed that a 25% stockholder should be able to wield a 50% vote either at a stockholders' meeting or a directors' meeting. That agreement did not appear either in the certificate of incorporation or in the by-laws; hence it constituted a fraudulent arrangement since "The stockholders, as also the public, are entitled to know from a corporation's official records who are in control of its management. If the present method of secret agreement was sanctioned serious abuse and misuse of corporate power would speedily result." It was the fact of "a secret control" which caused the court in that case to pronounce the agreement invalid. In the case before me it is not claimed that the plaintiff was to have a greater vote, per share, than his holding permitted. What was contemplated was that each stockholder have one vote for each share owned by him but that collective action should be taken only upon a 90% stock approval. In respect of the point under consideration, that arrangement is no different than a 51% requirement. Neither of such arrangements falls within the holding of the cited case. It should also be noted that while in the cited case the special arrangement was withheld from the by-laws, in the case before me the common intention was that the 90% requirement be contained in the by-laws and was in fact so expressed therein, but only partially. The plaintiff's objection goes to the parts omitted, such omission being in conflict with his co-stockholders' representation and promise. The question of public policy was very ably expressed in an article in the Harvard Law Review, vol. 62, p. 526 (1949), as follows:
*38 "Refusal to allow deviation from statutory scheme of majority control may be desirable for public-issue corporations where the ability to reach effective corporate decision would be blocked by giving to large numbers of directors and shareholders an individual power to veto. But no public policy requires that the owner-manager shareholders of a close corporation be prevented from unanimously limiting majority power. Since close corporation shareholders are few and well known to each other, corporate decision can still be effectively reached by compromise in spite of a protective power of veto; in any event, in case of deadlock, dissolution by equity decree remains possible."
I therefore hold that the 90% requirement both as to stockholders and directors, as claimed by the plaintiff, is a valid agreement and a by-law in conformity therewith is a lawful one.
The defendants challenge the power of this court to interfere with the defendant company in its internal affairs, and this because the company is a foreign corporation. The court recognizes that except in certain unusual instances, and only to protect our own citizens, may our courts interfere with the business or internal affairs in this State of a foreign corporation, where that corporation has come into this State and obtained authority to do business therein. That principle is not here involved. The plaintiff prays for the appointment of a receiver but seeks no provisional relief at this time in respect thereof. That was made clear both by the form of the order to show cause and by the statements of plaintiff's counsel in the oral and written arguments. With respect to a receivership, the matter will have to await the proofs at the trial. At this time the plaintiff seeks relief not against the corporation or any act done or contemplated by it but only against the two individual defendants. The corporate entity is without interest in the manner or measure of voting to which the stockholders may agree. It is no more interested in how the stockholders vote than who they are. The corporation would have no interest in any litigation in which one stockholder attempted specifically to enforce the agreement of another stockholder to sell his shares of stock; yet such litigation would be clearly maintainable *39 though indirectly and ultimately the company's stockholder personnel would be affected. I therefore hold that the dispute between these parties, insofar as it relates to the stockholder and director vote, is confined to the individual stockholders  the plaintiff and the two individual defendants  and that the corporation's internal affairs are not being interfered with by the granting of the relief here sought.
What relief may be awarded in this case? If at final hearing the plaintiff prevails, he will clearly be entitled to specific performance of the defendants' promise. The same end can be accomplished by reforming the by-laws to make them conform both to the representation and promise made to the plaintiff. Thus equity will by its decree accomplish the doing of that which the defendants were at all times since 1938 equitably obliged to do. Their duty of performance was a continuing one. At the present time, however, the relief must be one merely to preserve the status quo. By unanimous agreement the salaries of the three individuals were suspended some many months ago. I see no reason why until final hearing that status should be altered to enable the individual defendants to vote themselves corporate funds and to exclude the plaintiff from like provision. For 14 years these three individuals acted only when they were in complete accord, which is in itself a recognition that the arrangement was originally as the plaintiff asserts. There is no reason why this should, pendente lite, be altered. I will not, however, restrain the holding of stockholders' or directors' meetings, but I will preliminarily restrain the defendants, as officers and directors, from taking any affirmative action unless such action be approved, at a regularly convened meeting of the stockholders, by a vote of at least 90% of the outstanding stock interest or at a directors' meeting by a vote of directors holding no less than 90% of the outstanding stock. I will also restrain the individual defendants from entering in the minute book of the company any stockholder or director action not sustained by the measure of voting last mentioned. If any emergency should *40 arise before the time of trial which seriously affects the corporate interests and the stockholders and directors are then deadlocked on action to be taken, the matter may, upon proper notice, be called to my attention and I will deal with the situation at such time.
Present preliminary injunction in accordance with the views here expressed.