[Civ. No. 25528. Second Dist., Div. Two. Feb. 14, 1962.]

GEORGE R. OLINCY, as Trustee, etc., Plaintiff and Respondent, v. MERLE NORMAN COSMETICS, INC., et al., Defendants and Appellants.

J. M. A. Westermoe and W. Woodson Wallace, in pro. per., and Wallace & Wallace for Defendants and Appellants.

Milo V. Olson for Plaintiff and Respondent.

ASHBURN, J.—Defendants appeal from judgment in favor of plaintiff in action brought under Corporations Code sections

2236-2238[1] to determine validity of election of directors of Merle Norman Cosmetics, Inc., at meeting of October 10, 1960, and for other relief. The case turns primarily upon the validity of a by-law of a husband-wife equally owned corporation formed under the laws of Nevada, which by-law requires the presence of four members of a five-member board to constitute a quorum. The trial court upheld it.

Defendant corporation was formed under the laws of Nevada in October 1945, Merle Norman and Andrew Norman, her husband, being equal owners of all the stock. Except for the formalities incident to organization, the corporation has functioned as a California corporation, having its principal office and place of business, and holding its directors and stockholders meetings in this state, and all of its officers, stockholders, voting trustees, etc., being residents of California.

On March 21, 1946, Mr. and Mrs. Norman and their associates caused existing by-laws to be repealed and a new set enacted; they also entered into a voting trust agreement. The resolution effecting the repeal of the old by-laws and adoption of new ones is attached to the original of the latter and contains these recitals: "WHEREAS, by resolution this board has authorized this corporation to join in the execution of a certain Voting Trust Agreement whereby all of its shares are united for the purpose of the election of directors therein named and/or designated; and WHEREAS, to conform with and carry out the purposes and objects of said agreement, it is deemed by the board of directors of this corporation to be to its best interests and the best interests of its shareholders to repeal the existing By-Laws of this corporation and to adopt new By-Laws in the form presented to this meeting." The voting trust agreement effected on the same day recites that "WHEREAS, the depositing stockholders deem it for the

---

[1] *Corp. Code, § 2236:* "Upon the filing of an action therefor by any shareholder, the superior court shall try and determine the validity of any election or appointment of any director of any domestic corporation, or of any foreign corporation if the election was held or the appointment was made in this State. In the case of a domestic corporation the action shall be brought in the county in which the principal office of the corporation is located. In the case of a foreign corporation the action shall be brought in the county in which the corporation has its principal office in this State or in which the election was held or the appointment was made."

*Corp. Code, § 2238:* "The court may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, and direct such other relief as may be just and proper."

best interest of themselves and of the corporation to unite the voting power held by them as such stockholders and, to that end, to place said shares of stock in the hands of the trustees as hereinafter provided.'' Paragraph 2 says: ''During said period of twenty-one (21) years, the trustees shall possess and be entitled to exercise all rights of every name and nature, including the right to vote, give any consent, or otherwise act in their sole discretion, in respect of any and all shares deposited hereunder, subject to the following directions, limitations and restrictions: (a) At all stockholders' meetings for the election of directors, the shares of the corporation shall be voted as a unit, and for, but only for, the persons hereinafter in this sub-paragraph (a) named or to be named as therein provided. The authorized number of directors of the corporation is five, but the actual number of directors duly elected and qualified is four, and the persons so elected are: Andrew Norman Merle Norman Gail B. Selig Isaac Pacht. . . .

''Either Andrew Norman or Merle Norman may designate in their respective Wills a successor on said Board, but in the absence of such designation such successor on said Board shall be designated by the executor or administrator of his or her estate, as the case may be.

''If at any time the Board of Directors consists of only four members and said Board becomes deadlocked, a person to act as the fifth director thereon shall be designated, jointly, by Gail B. Selig, or his successor, and Isaac Pacht, or his successor. In the event a fifth director cannot be thus appointed, the Presiding Judge of the Superior Court of the State of California, in and for the County of Los Angeles, shall be requested to select as such director any one of three persons designated by Gail B. Selig and Isaac Pacht, or their respective successors on said Board. . . .''

Selig, Thoms and Pacht were the original voting trustees; they were succeeded by defendants C. C. Nethercutt, Sr., Thaddeus Nethercutt and plaintiff Olincy. All of the stock was deposited in an escrow with Title Insurance & Trust Co. pursuant to an order of the California Corporations Commissioner. The Nevada law expressly approves voting trusts for 15 years and appellant contends that it expired on March 21, 1961, because governed by Nevada law. California law authorizes voting trusts for a term of 21 years and this one was made and carried out in this state.

The by-laws in section 1 of article II provide: ''The author-

ized number of directors shall be five until changed by a By-law amending this Section 1 of Article II of these By-laws duly adopted by the vote or written assents of the shareholders entitled to exercise a majority of the voting powers of the corporation. . . .

"Four directors shall be necessary to constitute a quorum for the transaction of business; provided, however, that if four directors only are in office, three thereof shall constitute such quorum, but no business shall be transacted at any such meeting except upon the unanimous vote of all such three directors. If at any meeting of the board there shall be less than a quorum present, a majority of those present may adjourn the meeting from time to time until the time fixed for the next regular meeting of the board."

The Nevada statute (Revised Statutes § 78.315) provides: "Unless the certificate or articles of incorporation, or an amendment thereof, or the bylaws, shall provide for a lesser proportion, a majority of the board of directors of the corporation, at a meeting duly assembled, shall be necessary to constitute a quorum for the transaction of business and the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors or trustees." Section 78.060, Revised Statutes, says: "Every corporation, by virtue of its existence as such, shall have power: . . . (f) To make bylaws not inconsistent with the constitution or laws of the United States, or of this state, for the management, regulation and government of its affairs and property, the transfer of its stock, the transaction of its business, and the calling and holding of meetings of its stockholders."

The corporation had four directors until after the death of Andrew Norman on October 23, 1959. Plaintiff Olincy is his executor and since June 16, 1950, has been trustee under a trust agreement pursuant to which Mr. Norman transferred to him the voting trust certificates representing his 50 per cent beneficial interest in the stock which had been deposited with Title Insurance & Trust Co. Mrs. Norman also transferred her certificates to defendants Carl C. Nethercutt, Jr., and J.M.A. Westermoe in trust; all of the beneficial certificates have been held in these two trusts at all times since.

At some time after the death of Mr. Norman a deadlock in the board occurred. The board consisted of four members. Westermoe and Nethercutt, Sr., invoked section 819, Corporations Code and on February 24, 1960, secured appointment

of Mr. Bernard G. Hiss as provisional director by court order; under the statute he has all the rights and powers of a director until the deadlock is broken or he is removed by order of court or vote or written consent of holders of a majority of voting shares. None of these events of removal has occurred.

Thus there were five members on the board on October 4, 1960, at which time directors Nethercutt, Westermoe and Hiss were present. According to the by-laws four directors were necessary to a quorum, but there were only three present. Nevertheless they undertook to amend the by-laws to provide that a quorum of five members should be three, not four, members. This was followed by a stockholders meeting of October 10, 1960, at which an attempt was made to approve this amendment. Defendants (attorneys) Westermoe and Wallace were present as proxies of the two defendant voting trustees and plaintiff Olincy was present. Over Olincy's objections Westermoe and Wallace voted approval of the by-law amendment without disclosing to Olincy the nature of the action taken on October 4; they also purported to elect five directors —Westermoe, Wallace, Merle Norman, Olincy and Leon Brown, notwithstanding the provisions of the trust that only four directors be elected and notwithstanding the fact that they did not have and could not get unanimous consent of certificate holders to elect five directors. It is to this meeting and this election that the complaint is directed.

Appellants contend that the validity of the by-laws of this corporation must be determined by application of the laws of Nevada, that they command that no more than three directors constitute a quorum of five, hence the by-law requiring a quorum of four is void and actions taken in disregard of it are valid. They also claim that a voting trust of stock in a Nevada corporation is governed by the law of that state and although California authorizes such a trust for a period of 21 years, Nevada limits it to 15 years, which last mentioned term expired after the rendition of judgment herein. Respondent, on the other hand, takes the position that the by-law is governed by California law but that the point is immaterial because this one is valid under the laws of both California and Nevada; also that the same is true of the voting trust agreement.

First as to the by-law. ██ It is fundamental in corporation law throughout the United States that the right to be a corporation implies an inherent right to make by-laws so far as same are not inconsistent with federal or state constitution,

statutory restriction, charter provision or essential reasonableness. ▮ *People's Home Sav. Bank* v. *Sadler*, 1 Cal.App. 189, 195 [81 P. 1029] : "A by-law of a private corporation is a rule or law adopted by it for its internal government, and to regulate the conduct and prescribe the rights and duties of its members towards itself and among themselves in reference to the management of its affairs. Although the authority to enact such by-laws is frequently declared in the charter of the corporation, or by some general law, yet the authority to enact them does not depend upon such declaration, but is an inherent right which, in the absence of some positive legislative restriction, is incident to every corporation. ▮ The legislature may prescribe the formalities to be observed in their enactment, and may limit the scope and subjects for which they may be enacted; but in the absence of any restriction by the legislature, the propriety or character of the by-laws is to be determined by the corporation itself, subject, however, to the condition that they must be reasonable and not contravene or be inconsistent with its charter or any existing law of the state. Accordingly, the legislature of this state, in defining the inherent powers of a corporation in section 354 of the Civil Code, has declared that 'Every corporation, as such, has power: . . . 6. To make by-laws, not inconsistent with any existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock.' This declaration is general in its terms, and sufficiently comprehensive to include the right to enact the above-quoted by-law. By enumerating in section 303 of the Civil Code certain matters upon which corporations may enact by-laws the legislature has not limited the authority to make such by-laws which they would have as an incident inherent in their creation and irrespective of such legislation."

8 Fletcher Cyclopedia Corporations, permanent edition, section 4171, page 641: "It was the rule at common law that the power to make and adopt by-laws was inherent in every corporation as one of its necessary and inseparable legal incidents. And it is settled law throughout the United States, that, in the absence of positive legislative provisions limiting it, every private corporation has this inherent power as one of its necessary and inseparable legal incidents, independent of any specific enabling provision in its charter or in general law, such power of self-government being essential to enable the corporation to accomplish the purposes of its creation." (Accord: 13 Am.Jur. § 152, p. 284; 12 Cal.Jur.2d §§ 75-76, p. 659;

18 C.J.S. § 189, p. 602; 14 C.J. § 458, p. 360.) The last-cited treatise says, in section 464 at page 366: "It has been held, however, that as long as a by-law is not contrary to common right or the policy of the law, and is not unreasonable, the mere fact that it introduces a new rule which is not the rule of the common law does not invalidate it."

Though a majority is the implied norm for a quorum in the absence of provision to the contrary, it has been recognized frequently that requirement of a larger proportion is not unreasonable and is valid.

*Katcher* v. *Ohsman,* 26 N.J. Super. 28 [97 A.2d 180], involved a by-law requiring the vote of 90 per cent of stockholders upon matters not specifically regulated by statute. It was upheld, the court saying at page 184 [97 A.2d] : "Is a by-law requiring a vote from the stockholders greater in interest than 51% or a vote from directors greater than a majority in number of the directors offensive to public policy, since the greater the voting requirement the greater is the likelihood of an impasse or deadlock? That risk, however, is always present even where the provisions call for a mere majority. Many small corporations are formed by two individuals or two separate groups, each of whom seeks protection against being out-voted by the other. In those instances where the stock is equally divided amongst two persons or two groups, a board of directors of an even number of persons is constituted. Therefore a 51% stock vote requirement of such stockholders or a majority vote of such directors actually presents, as a practical matter, a requirement of unanimity. Such corporate requirements and effects do not offend the law and there therefore seems to be no reason why stockholders may not provide for *any* minimum vote, either in stock interest amongst the stockholders or in number amongst the directors, even if that minimum translates itself as a practical effect into a requirement of unanimity. In the absence of contrary agreement and provision, the law presumes that stockholders intend to make the rule of the majority controlling, but I know of no valid reason why stockholders are not at liberty to establish for themselves a voting rule or formula which will protect the holder of a single share against the action of all the other shareholders becoming binding or controlling upon him."

*Benintendi* v. *Kenton Hotel,* 294 N.Y. 112 [60 N.E.2d 829, 159 A.L.R. 280] : The by-laws of the hotel company provided (1) for unanimous action of stockholders, (2) that the direc-

tors should be elected by unanimous vote, (3) that no action should be taken by directors except by unanimous vote, and (4) that a by-law could not be amended except by unanimous action of stockholders. Suit was brought to have these by-laws adjudged valid. The court of appeals ruled that all were invalid except (4). Widespread dissatisfaction with this decision brought about legislative reversal of the public policy therein declared.

According to a comment upon a "Recent Statute" found in 62 Harvard Law Review, page 526, " [a] recent New York statute allows a corporation charter to require any or all of the following: (a) that more than a majority of the board of directors shall constitute a quorum; (b) that the votes of more than a majority of the directors shall be necessary to transact any specified or all business; (c) that more than the majority or plurality of voting shares otherwise prescribed by law shall constitute a shareholders' quorum; and (d) that more than the majority or plurality of voting shares otherwise prescribed by law shall be necessary to transact shareholder business, including amendments. N. Y. STOCK CORP. LAW § 9 (effective Sept. 1, 1948). While other states allow similar voting requirements for shareholder or director action, e.g., DEL. REV. CODE c. 65, §§ 5(11), 17 (1935); ILL. REV. STAT. c. 32, §§ 157.31, 157.37, 157.146 (1947), New York alone appears to have confined its statute, for all practical purposes, to closely-held corporations. This was done not by an arbitrary definition of the close corporation but rather by requiring the unanimous consent of shareholders or subscribers for adoption of the new provisions, a condition virtually impossible for the publicly-held corporation to meet." And at page 527: "Refusal to allow deviation from the statutory scheme of majority control may be desirable for public-issue corporations where the ability to reach effective corporate decision would be blocked by giving to large numbers of directors and shareholders an individual power to veto. But no public policy requires that the owner-manager shareholders of a close corporation be prevented from unanimously limiting majority power. Since close corporation shareholders are few and well known to each other, corporate decision can still be effectively reached by compromise in spite of a protective power of veto; in any event, in case of deadlock, dissolution by equity decree remains possible. N. Y. STOCK CORP. LAW § 9-4.

"In answer to widespread dissatisfaction with the *Benintendi* case, the present act was passed to make possible in

almost all cases the goals sought by the invalidated close corporation shareholder agreements. See N. Y. Leg. Doc. No. 65(K) at 5, 6 (1948). Long-term tenure of office can now be assured by making the power to remove officers dependent on unanimous vote. Thereby, each director-officer can veto his own removal. Other problems of the close corporation can now similarly be met by careful use of the provisions in the new statute.''

The history of California law of corporations shows that our legislators have always taken the liberal view of this matter. Section 303, Civil Code, as enacted in 1872, said: ''A corporation may, by its by-laws, where no other provision is specially made, provide: . . . 2. The number of stockholders or members, or the quantity of stock constituting a quorum.'' Section 308: ''. . . A majority of the Directors is a sufficient number to form a Board for the transaction of business, and every decision of a majority of the Directors forming such Board, made when duly assembled, is valid as a corporate act.'' As these sections evolved into provisions of the Corporations Code the law became even more explicit. Section 500, after providing for adoption, amendment or repeal of by-laws, says: ''However, the articles or by-laws may require the vote or written assent of the shareholders entitled to exercise more than a majority of the voting power for the amendment or repeal of by-laws generally, or of particular by-laws, or for the adoption of new by-laws.'' Section 501: ''The by-laws of a corporation may make provisions not in conflict with law or its articles for: . . . (d) The number, qualifications, duties, and compensation of directors; the time of their annual election; the requirements of a quorum for a directors' meeting, which shall not be less than one-third of the authorized number of directors nor less than two. The authorized number of directors may be changed by amendment of the articles, or, unless the articles forbid, by a by-law duly adopted by the shareholders, but the votes or written consents of shareholders holding more than 80 percent of the voting power are necessary to reduce the authorized number of directors below five.'' Section 816: ''A majority of the authorized number of directors constitutes a quorum of the board for the transaction of business unless the articles or by-laws provide that a different number, which in no case shall be less than one-third the authorized number of directors, nor less than two, constitutes a quorum.'' Section 817: ''Every act or decision done or made by a majority of the directors present at a meeting

duly held at which a quorum is present is the act of the board of directors, unless the law, the articles, or the by-laws require a greater number.'' It will be observed that California restrictions proceed by way of imposing a minimum upon the number of stockholders or directors who are qualified to act, not a maximum. Clearly this state sanctions a by-law which requires four as a quorum of a five-member board of directors.

We are inclined to agree with appellants, however, in their argument that the validity of the by-laws is to be determined according to the law of Nevada, the place of incorporation. (13 Am.Jur. § 156, p. 288; 18 C.J.S. § 189, p. 604; 20 C.J.S. § 1802, p. 22; *Palmer* v. *Chamberlin*, 191 F.2d 532; Anno. in 27 A.L.R.2d 435.) But so assuming we reach the same conclusion, validity of the by-law. Subdivision 2 of section 78.060 (Nevada Revised Statutes) expressly recognizes the fundamental doctrine first mentioned herein. It says: ''Every corporation, *by virtue of its existence as such,* shall have power: . . . (f) To make bylaws not inconsistent with the constitution or laws of the United States, or of this state, for the management, regulation and government of its affairs and property, the transfer of its stock, the transaction of its business, and the calling and holding of meetings of its stockholders.'' (Emphasis added.) Then the statute provides, in section 78.115, that the board shall consist of not less than three directors, a minimum not a maximum. Section 78.315, subparagraph 1 provides: ''Unless the certificate or articles of incorporation, or an amendment thereof, or the bylaws, shall provide for a lesser proportion, a majority of the board of directors of the corporation, at a meeting duly assembled, shall be necessary to constitute a quorum for the transaction of business and the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors or trustees.'' This, like the California statutes, prescribes a minimum number that can make up a quorum but does not preclude a by-law prescribing a greater number or proportion. A majority may be *necessary* to a quorum in the absence of a by-law provision requiring a greater number, but not *sufficient* where a quorum of four is expressly required, as here. The last phrase, ''and the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors or trustees,'' merely says that a majority of a quorum may act; and it adds nothing to the former portion of section

78.315. The by-law found in section 1 of article II above quoted, which prescribes the attendance of four directors as necessary to a quorum where five are in office or three when only four are in office, said three to act unanimously (all to the end of effectuating and preserving the existing equality of control between Mr. and Mrs. Norman), is undeniably valid unless inconsistent with the terms of section 78.315 above quoted. By-laws should be so construed as to sustain their validity if possible.

Volume 8, Fletcher Cyclopedia Corporations, permanent edition, *supra*, section 4195, page 739: "They must, of course, be given a reasonable construction and, when reasonably susceptible thereof, they should be given a construction which will sustain their validity, under the general requirements of validity which are discussed elsewhere. Thus, where a by-law is reasonably susceptible of different constructions, one in harmony and the other in conflict with a statute, the former construction will be adopted. Likewise, a by-law will be construed in harmony with the charter if it is reasonably susceptible of such a construction."

Counsel have cited and we have found no Nevada court decision which throws light on this problem. *State* ex rel. *Corey* v. *Curtis,* 9 Nev. 325, is of no assistance for the by-law there considered was in these words: " 'A majority of the whole number of trustees shall form a board for the transaction of business, and every decision of a majority of the persons duly assembled as a board shall be valid as a corporate act.' " (P. 335.) It was mandatory in terms and held to be such. There was in it no room for construction, as there is in section 78.315, quoted *supra.*

We hold that the by-law in question was and is valid.

If we were to find that that by-law is invalid under the laws of Nevada, this would be a proper case for application of the rule that an invalid by-law is enforceable as between the parties within the corporate structure,—enforceable as a contract. (*Jennings* v. *Bank of California,* 79 Cal. 323, 325 [21 P. 852, 12 Am.St.Rep. 145, 5 L.R.A. 233] ; *People's Home Sav. Bank* v. *Sadler, supra,* 1 Cal.App. 189, 197; *Oakland Scavenger Co.* v. *Gandi,* 51 Cal.App.2d 69, 81 [124 P.2d 143] ; 18 C.J.S. § 181, p. 592; 8 Fletcher Cyclopedia Corporations, *supra,* § 4194, p. 736 ; 159 A.L.R. 290, 291, anno.)

Appellant argues, in an effort to forestall our holding that the proceedings of October 10 were void, that the by-

laws had been amended before that date and the four-quorum by-law among others had been eliminated. This was attempted on October 4, 1960. The by-laws contained not only the four-quorum provisions, but also said in section 1 of article VII: "The stockholders, by the affirmative vote of the holders of a majority of the stock issued and outstanding may, at any meeting, provided the substance of the proposed amendment shall have been stated in the notice of the meeting, amend or alter any of these By-Laws." Also in section 7 of article I: ". . . No business other than that stated in the notice shall be transacted at any meeting without the unanimous consent of all the stockholders entitled to vote thereat." At the time of holding the meeting of October 4th there were five directors in office (which included Mr. Hiss); four were necessary to a quorum; notice of the meeting was required and it had to state the substance of any proposed amendment to the by-laws; this notice did not do so; in such event the amendment could be accomplished only through unanimous consent of all stockholders entitled to vote; one of them was plaintiff Olincy who obviously did not agree to striking down the voting trust arrangement which he, as trustee, was obligated to uphold and sustain, and that was the object of the proposed amendment. There was in fact no quorum of four at the meeting and the votes of C. C. Nethercutt, Sr., Westermoe and Hiss, the only persons present, were insufficient to hold a legal meeting or pass any resolution. Defendant-appellants attempted to put through the desired amendments in violation not only of the by-laws but the voting trust agreement as well. The action of October 4th was void and hence cannot afford a foundation for anything done on October 10th.

 Concerning appellants' contention that the voting trust agreement is invalid because violative of Nevada corporation laws, it appears that there was no such issue at the trial. The judge said in open court: "As part of the Court's judgment, the Court declares that the issue of the validity of the voting trust as a whole as such is not before us and is not decided." This was followed in the formal findings: "Defendants' answer and no pleadings filed herein raised the issue of any alleged invalidity of the Voting Trust, Exhibit A to the complaint." The illegality, if any, in this voting trust, pertaining as it does to the strictly internal affairs of the corporation, is not the kind that the court will seize upon of its own motion at any stage of the trial. (*Cf. Fomco, Inc.* v. *Joe Maggio, Inc.*, 55 Cal.2d 162, 165-166 [10 Cal.Rptr. 462,

358 P.2d 918]; *Apra* v. *Aureguy,* 55 Cal.2d 827, 831 [13 Cal. Rptr. 177, 361 P.2d 897].)

The proceedings of the shareholders meeting of October 10 were held to be violative of the voting trust agreement as well as the by-laws. Attorney for plaintiff conceded in open court that that election of Olincy and Brown was invalid, and Mr. Wallace, as attorney for defendants, declared that defendants Wallace, Westermoe and Merle Norman "waived any right they may have to act as directors under the actions taken at the shareholders' meeting on October 10, 1960." The court adjudged to be void the by-law amendment and the election of officers on October 10, 1960. This left in office as directors Olincy, Nethercutt, Sr., Westermoe, George H. Buckingham, and Hiss, who, as found in paragraph VIII of the findings, were the directors on October 4, 1960. While this finding is not written into the judgment, that document, construed with the findings, in effect so declares. (See *Gelfand* v. *O'Haver,* 33 Cal.2d 218, 222 [200 P.2d 790]; *Downs* v. *Kroeger,* 200 Cal. 743, 749-750 [254 P. 1101]; *Ampuero* v. *Luce,* 68 Cal.App.2d 811, 820 [157 P.2d 899].) The judgment also orders the voting trustees "to hold a meeting of the shareholders of defendant Merle Norman Cosmetics, Inc., a corporation, for the purpose of electing directors of said corporation and that such election shall be held on or before 30 days after the entry of the judgment herein. Said defendants, their proxies, agents or attorneys are ordered to hold said election and conduct themselves as Voting Trustees pursuant to the terms, conditions and provisions of paragraph 2(a) and (b) of the Voting Trust Agreement, Exhibit A to plaintiffs' complaint, and not contrary to or inconsistent therewith."

The court was apprised upon oral argument that C. C. Nethercutt, Sr., one of the voting trustees, has died since the entry of judgment. The voting trust agreement provides for appointment of a successor by joint action of the surviving trustees. It is manifest to us that defendants will not cooperate in making such appointment and that Civil Code section 2288 becomes operative. It says: "On the death, renunciation, or discharge of one of several cotrustees the trust survives to the others." The judgment binds the surviving trustees and we have granted respondent's motion to dismiss the action as to said C. C. Nethercutt, Sr., in his capacity of trustee of said voting trust.

This judgment is undoubtedly correct, for section 2238,

Corporations Code specifically authorizes the court to "order a new election to be held . . . and direct such other relief as may be just and proper." In *Edward Sidebotham & Son* v. *Chandler*, 183 Cal.App.2d 823, 831 [7 Cal.Rptr. 216], this court said: "An action to determine the validity of a corporation shareholders' election is equitable in nature and the court will administer complete relief and adjust the case in all of its branches in order to prevent multiplicity of action. (*Boericke* v. *Weise*, 68 Cal.App.2d 407, 411 [156 P.2d 781].)

 The action of the trial court is in accord with the general rule that a court of equity, having once acquired jurisdiction, will adjust all the differences between the parties arising from the causes of action in order to do complete justice and prevent further litigation. (*Sears* v. *Rule*, 27 Cal.2d 131, 148-149 [163 P.2d 443].) In so adjusting the differences of the parties herein under the existing pleadings, the court, in exercise of its equity powers, and with the other factual prerequisites of section 811, Corporations Code, having been met, was within its jurisdictional prerogative in ordering the removal of Mueller as a director and further barring him from reelection for the specified period."

 Appellants argue, apparently in anticipation of affirmance, that the subject matter of the judgment has become moot because the judgment cannot be carried out or enforced. The claim is that the articles of incorporation have been amended since judgment entered and the voting trust has been amended in important respects, in addition to which it expired under the Nevada law on March 21, 1961 (judgment was entered February 3, 1961), and, the judgment having been stayed by appeal, no such election can be held as has been ordered by the judgment. We cannot agree. Courts of review pass upon the record before them, and except in rare instances do not take cognizance of events occurring after entry of judgment.

"The function of an appellate court is to review the action of the inferior court in rendering the judgment or making the order from which the appeal is taken. For this purpose a record of the proceedings before the inferior court and of the matters presented for its action is brought to the appellate court, and in determining the correctness of the judgment or order appealed from it is limited to a consideration of that record. If the judgment is affirmed such affirmance is as of the date at which it was rendered. If it is

reversed the case stands as if no judgment had been rendered by the inferior court. It is therefore manifest that error on the part of the inferior court cannot be predicated by reason of any matter occurring subsequent to its rendition of the judgment, and it is equally evident that it would be irrelevant for the appellate court to entertain any evidence of such subsequent matters.'' (*People's Home Sav. Bank* v. *Sadler, supra,* 1 Cal.App. 189, 193.) ''The fact that some years have passed since this proceeding was commenced does not require its dismissal, as the respondents assert. Although courts will refuse to determine an abstract question which does not rest upon existing facts as presenting a moot case, the respondents' bare assertion that the routes in controversy are now quite different than they were at the time of trial and many customers have been exchanged constitutes no basis for such an order.'' (*George* v. *Burdusis,* 21 Cal.2d 153, 163 [130 P.2d 399].)

In view of what occurred on October 4 and October 10, 1960, this court could not accept as proof of *lawful* action the statements of counsel as to occurrences alleged to have taken place after entry of judgment herein. The record before us, particularly appellants' answer to motion to dismiss as to defendant C. C. Nethercutt, Sr., affirmatively shows that they have proceeded upon the hypothesis that the articles of incorporation, the by-laws and the voting trust could be and have been changed by action which is forbidden by the terms of those instruments and in deliberate disregard of the judgment in this case, which, though pending on appeal, is presumptively correct. (28 Cal.Jur.2d § 5, p. 618; *People* v. *Farrara,* 46 Cal.2d 265, 268-269 [294 P.2d 21]; *Faulkner* v. *Faulkner,* 148 Cal.App.2d 102, 108 [306 P.2d 585]; *Rude* v. *Rude,* 148 Cal.App.2d 793, 799 [307 P.2d 679].)

Nor does the mere fact of expiry of the voting trust term after entry of judgment render it moot. In *Boericke* v. *Weise,* 68 Cal.App.2d 407, 420 [156 P.2d 781], the court, speaking of a one-year voting trust agreement, said that respondents ''contend the issue is moot because the year provided in the agreement has elapsed. This argument of respondents is without merit. The issue is by no means moot inasmuch as the agreement, if valid, constituted a contract and Weise may or may not have an action for breach of contract. (*DeGarmo* v. *Goldman,* 19 Cal.2d 755 [123 P.2d 1].) The holding that the voting trust was not consummated because the stock was not delivered to the trustee does not determine that the voting

trust was illegal. The voting trust was a contract. If valid, it became binding when it was executed.''

We have not discussed the contention insistently advanced by appellants in their briefs and upon oral argument that ''Mr. Olincy, as trustee of the voluntary trust, did not come into court with clean hands in this proceeding,'' for there is no assignment of error relating to the rulings of the court upon such evidence as was proffered in support of this plea and the trial judge held it to be immaterial, relating to a false issue in the cause. Finding XXIII says: ''The allegations contained in paragraph designated XII, subdivision (b), and paragraph XVI of defendants' answer on file herein are immaterial to the issues of this action and by reason thereof, no finding is made thereon.'' The paragraph of the answer to which reference is there made is the one which alleges want of clean hands. Also, finding XXI says: ''No evidence in support of the allegations contained in the following designated paragraphs in the verified answer of defendants on file herein was proffered, and as to said matters, said allegations were not proved. . . . 'That the said GEORGE R. OLINCY and GEORGE BUCKINGHAM voluntarily absented themselves from the meeting of October 4, 1960 with the intention and purpose of preventing the directors of the corporation from functioning.' ''

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied March 8, 1962, and appellants' petition for a hearing by the Supreme Court was denied April 11, 1962.