[Civ. No. 48773. Second Dist., Div. Two. Mar. 21, 1977.]

ANN GOSS, Plaintiff and Appellant, v.
ARTHUR C. EDWARDS et al., Defendants and Respondents.

**COUNSEL**

Mitchell & Di Loreto and Robert E. Mitchell for Plaintiff and Appellant.

Ervin, Cohen & Jessup, Allan Browne and George P. Schiavelli for Defendants and Respondents.

**OPINION**

**FLEMING, J.**—Action under former California Corporations Code section 2236[1] (in effect at the time of trial) to set aside the 1 May 1975

[1]All statutory references hereafter are to the Corporations Code unless otherwise stated.

election of directors of Dunn-Edwards Company, a closely held corporation, based on the alleged invalidity or revocability of a voting trust whereby plaintiff's right to vote her 77 shares of the common stock of the company was transferred to defendant Arthur C. Edwards effective 6 March 1970. Plaintiff executed the voting trust as part of a comprehensive property settlement agreement which she and defendant Edwards entered into at the time of their divorce, and which was integrated and incorporated into the final decree. The purpose of the voting trust, of which defendant Edwards is trustee, was to permit the community property stock owned by the parties in the corporation to be equally divided while continuing control and management ·of the business in Edwards. The voting trust agreement provided that the trust would

sooner; that Edwards had the sole right to vote the shares, but plaintiff remained the equitable owner thereof, entitled to dividends and on termination of the trust to reconveyance of shares. The property settlement agreement also divided the remaining assets of the parties and required Edwards to pay plaintiff $25,000 per year as alimony, payment to continue even after her remarriage, and also required that Edwards use his net income (after payment of $25,000 alimony to plaintiff, $25,000 annually to himself, and income taxes) to retire community debts which totalled $885,500. The divorce decree has become final and plaintiff has not attacked it in this or any other proceeding.

Plaintiff appeals an adverse judgment of the trial court. Her principal contention is that under section 2231 in effect at the time of the agreement she could revoke the voting trust at any time,[2] and therefore the court erred as matter of law in not giving effect to her letter of revocation dated 23 April 1974.

The court made the following material findings and conclusions: plaintiff never participated in the business or management of Dunn-Edwards Company, which Edwards built up and managed over a 35-year period; plaintiff was independently represented by legal counsel during the marital dissolution, and at that time her counsel informed Edwards

---

[2]California Corporations Code section 2231 effective before 1 January 1977, provided as follows: "Any trust, heretofore or hereafter created, the *sole or principal purpose of which is the voting or representing of shares,* may be terminated at any time by the holders of a majority in interest of the beneficial interests therein. No such voting trust shall be made irrevocable for a period of more than 21 years." (Italics added.) Said statute was in effect both when the parties executed the voting trust agreement in March 1970 and also at the time of trial in October 1975. The statute has now been superseded by Corporations Code section 706, discussed *infra.*

that plaintiff wanted certain benefits in addition to her one-half interest in the community property, in particular alimony that would not terminate on remarriage; Edwards agreed to these benefits in return for voting control of the Dunn-Edwards stock; plaintiff and Edwards agreed that Edwards should retain voting control of the company and that such control was in the best interests of the corporation since Edwards possessed the expertise to develop it successfully; plaintiff's counsel prepared the voting trust agreement and certificate; the voting trust agreement and certificate were incorporated into the property settlement agreement, which in turn was made part of the decree of dissolution; the parties intended the trust to be irrevocable for 21 years or until Edwards' earlier death; the major purpose of the voting trust agreement was to settle the dissolution matter "in a practical and business like way for all parties," the voting trust was consideration for other benefits to plaintiff and bargained for and given in exchange for such consideration; and "22. All the terms and conditions of the property settlement agreement were bargained for in consideration for one another. The agreement was integrated. The voting trust agreement and Arthur Edwards' right to vote plaintiff's shares cannot be set aside without doing violence to the entire property settlement agreement and decree of dissolution, all of which would result in a material failure of consideration to Arthur Edwards. Such a result would be and is inequitable and unjust."

The court also concluded that any remedies for violations of the securities law were barred by the then applicable two-year statute of limitations (former Corp. Code, § 25507); the voting trust agreement is not revocable under either former Corporations Code section 2231 or Civil Code section 2280; plaintiff is estopped and also barred by laches from terminating the voting trust agreement by having accepted benefits under the property settlement agreement for more than four years before challenging it; and accordingly the 1 May 1975 election of directors of Dunn-Edwards Company was validly held and Edwards properly voted plaintiff's shares.

The only serious issue in this case is the applicability of former Corporations Code section 2231 (*supra,* fn. 2) to the instant voting trust.[3] Plaintiff unquestionably holds the "majority in interest of the beneficial

---

[3] The trial court properly concluded that Civil Code section 2280 applies only to a voluntary trust for which no consideration was given. The statute reads: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor. . . ." (See *Touli* v. *Santa Cruz County Title Co.* (1937) 20 Cal.App.2d 495, 496-497 [67 P.2d 404].) Plaintiff's counsel conceded this point during oral argument on motion for new trial.

interests" in the trust; the only question is whether the trust is one "*the sole or principal purpose* of which is the voting or representing of shares." (Italics added.) If so, plaintiff had the right to terminate the trust under former section 2231 unless the equitable defenses of estoppel or laches barred such statutory right. The trial court applied well-established principles of contract law and family law in reaching a conclusion not challenged by anyone, namely, that the property settlement agreement was integrated and that the voting trust agreement was an inseparable part thereof, so that absent section 2231 plaintiff has no legal right to terminate or modify either agreement after having accepted monetary benefits under the property settlement agreement for more than four years before taking action to disaffirm part of it. This familiar body of law, however, evolved separately from the historical background and enactment of section 2231, which was designed to protect against various dangers of voting trusts. The trial court here found that the sole purpose of the voting trust agreement was not the voting of shares, but rather to settle the dissolution "in a practical and businesslike way." Yet in a sense this argument is semantic, for it could as easily be said that the sole purpose of the voting trust device was to maintain voting control in Edwards, maintenance to be effected as one of the bargained-for incidents of the property settlement agreement. Clearly if section 2231 proscribed the use of irrevocable voting trust arrangements under all circumstances, the parties could not use such a device to effectuate their property settlement agreement any more than they could contract to perform any act in violation of law. ■ Accordingly the threshold issue is whether section 2231 indeed proscribed the use of irrevocable voting trust arrangements under circumstances like those at bench. If so, then it will be necessary to determine whether the doctrines of laches or estoppel may be invoked to defeat a statutory right under section 2231 to terminate a voting trust, which right, according to the statute, may be invoked "at any time."

The plain effect of the voting trust agreement and the property settlement agreement herein is to separate the beneficial ownership of plaintiff's shares of stock from the voting rights of those shares. Separation of actual ownership and voting control is the essence of a voting trust. (See 1A Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1976) § 174.02; 5 Fletcher, Cyclopedia of the Law of Private Corporations, Voting Trusts (rev. ed. 1976) § 2075, pp. 330-331; Note, *The Voting Trust: California Erects a Barrier to a Rational Law of Corporate Control* (1966) 18 Stan.L.Rev. 1210; Annot., 98 A.L.R.2d 376.) Since the

nineteenth century, courts and commentators have expressed reservations about the use of voting trusts, and legislatures have imposed a variety of controls on their use. (See Ballantine, *Voting Trusts, Their Abuses and Regulation* (1942) 21 Tex.L.Rev. 139.) Section 2231 was enacted in response to then current distrust of the voting trust device and was patently intended to prevent irrevocable alienation of shareholder voting rights. Recent commentators have expressed reservations about the regulation of voting trusts, claiming that the old distrust of the device was not premised on rational grounds. (See especially Note, *supra,* 18 Stan.L.Rev. 1210.) Despite many recent, well-reasoned criticisms of the legislative limitation on the use of the voting trust device, especially in the context of a closely held corporation (where it can easily be demonstrated that most of the inherent problems of the voting trust have no application),[4] the Legislature has not seen fit to remove all restrictions on voting trusts, but has merely relaxed these restrictions somewhat by providing in section 706, subdivision (b) (eff. 1 Jan. 1977) that a voting trust may be made irrevocable for a maximum 10-year period, plus one further 10-year extension at the option of the beneficial owners.

On the other hand, the Legislature has recently expressed itself in favor of permitting a spouse who is operating or managing a community property business to continue in sole control of the business despite the otherwise equal rights of the spouses to manage and control their community property. (See Civ. Code, § 5125, subd. (d) providing that "A spouse who is operating or managing a business or an interest in a business which is community personal property has the sole management and control of the business or interest.") One of the purposes of the voting trust device herein was to permit the managing spouse, Edwards, to continue to run the business. In light of the statutory recognition of the legitimacy of such an objective, it can be said that the device here used had a valid purpose in addition to that of alienating voting rights. Recognition of an additional purpose does no violence to the policy underlying the voting trust statute. Most perceived evils in the voting trust arrangement have involved a fear that control of the corporation by persons not beneficially interested would result in reckless mismanagement to the detriment of the beneficial owners; see, e.g., *Overfield* v. *Pennroad Corp.* (E.D.Pa. 1941) 42 F.Supp. 586, (1943) 48 F.Supp. 1008, modified (3d Cir. 1944) 146 F.2d 889, for one example of such abuse. We agree with defendants that none of these evils is involved here and that on this

---

[4]See especially Note, *supra,* 18 Stan.L.Rev. 1210, 1212-1215; Burke, *Voting Trusts Currently Observed* (1940) 24 Minn.L.Rev. 347, 356.

record it appears that defendant Edwards has successfully managed the company and is strongly motivated to continue to do so. We do not deal with a large, publicly held corporation in the grip of a secret voting trust.

We conclude that in this instance the purposes of the voting trust were multiple. The agreement provided for the voting of the shares, but in addition, it formed an integral part of an arrangement that made it possible for the husband to continue to run the business he had created, and also served as one of several interrelated legal instruments used by the parties to effect orderly division of community property, provide for payment of community debts, and assure continuity of business income to the members of the community in the period following the dissolution of their relationship. Under these circumstances section 2231 does not apply.

■ Even if our construction of former section 2231 is incorrect, whatever right of termination plaintiff may have had under the statute has been lost by laches and estoppel. An action to defeat a corporate election is a broad-based equity action in which the court may examine the entire transaction without being limited to technical or procedural issues and may adjust the rights of the parties to do justice among them. (See *Columbia Engineering Co.* v. *Joiner* (1965) 231 Cal.App.2d 837, 849, 855, 856-857 [42 Cal.Rptr. 241]; *Lawrence* v. *I. N. Parlier Estate Co.* (1940) 15 Cal.2d 220, 227 [100 P.2d 765]; *Braude* v. *Havenner* (1974) 38 Cal.App.3d 526, 530 [113 Cal.Rptr. 386]; *Olincy* v. *Merle Norman Cosmetics, Inc.* (1962) 200 Cal.App.2d 260, 275 [19 Cal.Rptr. 387].) At least two cases infer that defenses of laches and estoppel can be raised (*Olincy* v. *Merle Norman Cosmetics, Inc., supra,* 200 Cal.App.2d at p. 277; *Colburn Biological Institute* v. *De Bolt* (1936) 6 Cal.2d 631, 643 [59 P.2d 108]), and in *Columbia Engineering Co., supra,* the court remanded the action for retrial of issues that included laches and waiver. (231 Cal.App.2d at p. 859.)

Plaintiff is not estopped from terminating the voting trust agreement simply by having entered into it, or by having prepared the agreement, but under ordinary principles of equity she may be prevented from revoking the voting trust agreement by a showing that she has accepted substantial benefits under the property settlement agreement, that modification of that agreement would be seriously detrimental to defendant Edwards, who relied on the agreement and honored its provisions for more than five years, and that revocation of the voting trust would do violence to the property settlement agreement and

deprive Edwards of his bargained-for consideration. (*Columbia Engineering Co., supra; Olincy, supra; Michell* v. *Grass Valley Gold Mines* (1929) 206 Cal. 609, 617 [275 P. 418].) Further, the policy expressed in Civil Code section 5125, subdivision (d) specifically approves Edwards' right to retain management and control of the business that he developed. Fully supported is the trial court's finding that plaintiff is guilty of laches and estopped by principles of unjust enrichment from acting in derogation of the property settlement agreement by terminating the voting trust. We know of no holding that a statute enforceable in equity deprives the court of its normal power to do equity among the parties. Plaintiff cites *Ayman* v. *Teachers Retirement Bd. of City of N.Y.* (1959) 19 Misc.2d 355, 374 [193 N.Y.S.2d 2], but in that case the court merely held that acceptance of retirement benefits did not estop the beneficiaries from making a constitutional challenge of impairment of contract to the board's change of mortality tables which adversely affected payment of benefits. Not only was *Ayman* factually dissimilar, but it contained no showing of prejudice to the Board as a result of the alleged laches. We conclude that the phrase "at any time" in section 2231 does not preclude application of general equitable principles of law to the cause.

Plaintiff's remaining contentions have little merit. The alleged securities violation was clearly barred by the statute of limitations provided in former section 25507, subdivision (a) (two years after the violation occurred or one year after plaintiff's discovery of the facts constituting the violation). Plaintiff concedes this point in her opening brief, but argues that there is nevertheless liability under former section 25510 providing in relevant part: "Nothing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect." This statute is wholly inapplicable since plaintiff has no other statutory or common law remedies based on failure to qualify the security, except the remedy provided by section 25503 and limited by section 25507, subdivision (a).

As to failure to file an answer, plaintiff chose a remedy under former sections 2236-2237 which was summary in nature, which did not provide for the filing of an answer, and which required that a hearing be held within five days of the filing of the complaint. Defendants filed extensive declarations and exhibits controverting the material allegations of the complaint, and no prejudice to plaintiff resulted from the failure to caption these documents "Answer." (*Pilch* v. *Milikin* (1962) 200 Cal.App.2d 212, 221-222 [19 Cal.Rptr. 334].)

■ On the hearing date, 22 October 1975, plaintiff's counsel requested time to file controverting affidavits by plaintiff in response to defendant's declarations. The court denied the request. On motion for new trial the court said plaintiff's declarations would not have affected its decision because its judgment was based solely on statutes, the property settlement agreement, and the voting trust agreement. Because the judgment rested solely on documents and statute law, denial of a continuance could not have prejudiced plaintiff, and the trial court did not abuse its discretion. (*Estate of Smith* (1973) 9 Cal.3d 74, 81 [106 Cal.Rptr. 774, 507 P.2d 78].)

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied April 14, 1977, and appellant's petition for a hearing by the Supreme Court was denied May 19, 1977. Mosk, J., was of the opinion that the petition should be granted.